**Kalonji SAADIQ, Appellant,**

v.

**STATE of Iowa, Appellee.**

**Nos. 84-1424, 84-1688.**

Supreme Court of Iowa.

May 21, 1986.

Alfredo G. Parrish, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Pamela Greenman Dahl, Asst. Atty. Gen., and James A. Smith, Co. Atty., for appellee.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, SCHULTZ, and CARTER, JJ.

UHLENHOPP, Justice.

This proceeding presents legal issues growing out of a conviction of possessing a firearm in violation of section 724.26 of the Iowa Code of 1983.

On May 11, 1983, defendant Kalonji Saadiq entered a counseled guilty plea to a charge of third-degree theft in violation of section 714.2(3) of the Iowa Code of 1983:

> The theft of property exceeding one hundred dollars but not exceeding five hundred dollars in value, or the theft of any property not exceeding one hundred dollars in value by one who has before been twice convicted of theft, is theft in the third degree. Theft in the third degree is an aggravated misdemeanor.

Saadiq was sentenced to two-years imprisonment, with the sentence suspended on one year of probation.

On May 30, 1984, the county attorney charged Saadiq with possession of a firearm by a felon in violation of section 724.-26.

On June 11, 1984, Saadiq filed an application for postconviction relief from his prior theft conviction. His application was denied August 8, 1984.

On September 18, 1984, Saadiq was convicted on jury trial of the firearm charge. He received a two-year sentence, suspended on probation and community service.

Saadiq appealed from both denial of postconviction relief and conviction of the firearm charge, and we consolidated the appeals.

I. *Scope of section 724.26.* The firearm charge was under section 724.26 of the 1983 Code:

> Any person who is convicted of a *felony* in any state or federal court and who subsequently possesses, receives, or transports or causes to be transported a firearm or offensive weapon is guilty of an aggravated misdemeanor.

(Emphasis added.) The "felony" on which the firearm conviction rests was the conviction on the prior theft charge. The question is, what is the meaning of "felony" in section 724.26?

The question involves the familiar rule of statutory construction relating to general vis-a-vis specific statutes. 73 Am.Jur.2d *Statutes* § 257 (1974); 82 C.J.S. *Statutes* § 369 (1953).

Sections 701.7 and .8 of the 1983 Code provide generally:

> A public offense is a felony of a particular class when the statute defining the crime declares it to be a felony. Felonies are class "A" felonies, class "B" felonies, class "C" felonies, and class "D" felonies. Where the statute defining the offense declares it to be a felony but does not state what class of felony it is or provide for a specific penalty, that felony shall be a class "D" felony.

> All public offenses which are not felonies are misdemeanors. Misdemeanors are aggravated misdemeanors, serious misdemeanors, or simple misdemeanors. Where an act is declared to be a public offense, crime or misdemeanor, but no other designation is given, such act shall be a simple misdemeanor.

Sections 902.9 and 903.1 of the 1983 Code provide generally:

> 902.9. The maximum sentence for any person convicted of a felony shall be that prescribed by statute or, if not prescribed by statute, if other than a class "A" felony shall be determined as follows:

> 1. A class "B" felon shall be confined for no more than twenty-five years.

> 2. An habitual offender shall be confined for no more than fifteen years.

> 3. A class "C" felon, not an habitual offender, shall be confined for no more than ten years, and in addition may be sentenced to a fine of not more than five thousand dollars.

4. A class "D" felon, not an habitual offender, shall be confined for no more than five years, and in addition may be sentenced to a fine of not more than one thousand dollars.

903.1. When a person is convicted of a misdemeanor and a specific penalty is not provided for, the court shall determine the sentence and shall fix the period of confinement or the amount of fine, if such be the sentence, within the following limits:

1. For an aggravated misdemeanor, imprisonment not to exceed two years, or a fine not to exceed five thousand dollars, or both.

2. For a serious misdemeanor, imprisonment not to exceed one year, or a fine not to exceed one thousand dollars, or both.

3. For a simple misdemeanor, imprisonment not to exceed thirty days, or a fine not to exceed one hundred dollars.

■ Section 724.25(1) of the 1983 Code, however, immediately preceding section 724.26 involved here, provides specifically:

As used in [section] 724.26, the word "felony" means any offense punishable in the jurisdiction where it occurred by imprisonment for a term exceeding one year.

As the latter section relates specifically to section 724.26, it controls here, and because Saadiq's third-degree theft conviction subjected him to maximum penalty of two-years imprisonment, it is within the definition of felony for purposes of section 724.26. The legislature chose to define "felony" differently for purposes of section 724.26 than in sections 701.7 and 902.9. That is its prerogative. *Hawkeye Bancorporation v. Iowa College Aid Commission*, 360 N.W.2d 798, 802 (Iowa 1985).

■ In exercising its power to define crimes "the legislature may be its own lexicographer and write its own definitions of words and terms." *State v. Durgin*, 328 N.W.2d 507, 509 (Iowa 1983). We have stated that the expansive revision of the criminal code has occasionally necessitated our harmonizing apparently conflicting sections. *Id.* "In so doing, our ultimate goal is to ascertain, and, if possible, give effect to legislative intent." *Id.* When a statute is plain and its meaning clear, however, we are not permitted to search for meaning beyond the express terms of the statute. *State v. Sunclades*, 305 N.W.2d 491, 494 (Iowa 1981). If the language is unambiguous, we must "look to what the legislature said rather than what it should or might have said." Iowa R.App.P. 14(f)(13); *Le Mars Mutual Insurance Co. v. Bonnecroy*, 304 N.W.2d 422, 424 (Iowa 1981).

The language of sections 724.25 and 724.26 is unambiguous. K. Dunahoo, *The New Iowa Criminal Code: Part II*, 29 Drake L.Rev. 491, 572 (1979–80). The legislature added these sections to the criminal code in 1978. The new section 724.26 was patterned after the federal law. *Id.* at 571. *See* 18 U.S.C. §§ 922–25; 18 U.S.C.App. § 1202 (1982). Both the Iowa and federal statutes uniformly define felony for purposes of felony-firearm laws in terms of the maximum sentence for the predicate conviction.

Saadiq's argument that the legislature intended only to prohibit possession of firearms by violent offenders convicted of felonies under section 701.7 is not supported by the language of section 724.25. We previously rejected defendant's argument that section 724.26 is overbroad because it prohibits those convicted of non-violent as well as violent crimes from possessing firearms. *State v. Rupp*, 282 N.W.2d 125, 130 (Iowa 1979). We quoted the Court of Appeals for the Ninth Circuit: " 'There is a legitimate interest in minimizing the felonious use of firearms, and the legislature reasonably may decide that persons with criminal convictions have more of a tendency to commit a crime of violence than persons without criminal records.' " *Id.* (*quoting Marchese v. California*, 545 F.2d 645, 647 (9th Cir. 1976)). *See also* K. Dunahoo, *supra*, at 572 ("The apparent rationale for this definition [in section 724.25] is a legislative decision that uniform criteria should be applied to persons convicted of a crime serious enough to warrant potential imprisonment

in excess of one year, notwithstanding the felony-misdemeanor classification of the crime."). As the predicate crime may have occurred in a jurisdiction having a different definition of felony, the employment of a definitive "exceeding one year" in section 724.26 is particularly useful.

We also reject Saadiq's assertion that the primary difference between the classification of a crime as a misdemeanor or a felony is whether the convict loses his constitutional right to bear arms. While the felony classification in section 724.26 relates to this right, the classification made in other sections of the criminal code is primarily for the purpose of imposing punishment. *See* Iowa Code §§ 902.1, 902.9, 903.1. *See also State v. Robbins,* 257 N.W.2d 63, 67 (Iowa 1977) ("while it is true crimes in this State are ordinarily classified as felonies or misdemeanors by the punishment imposed ... that does not preclude the legislature from providing exceptions to such designations").

■ In light of the definition provided in section 724.25, section 724.26 prohibits any person convicted of an offense punishable by imprisonment for a term exceeding one year from possessing, receiving, or transporting or causing to be transported a firearm or offensive weapon. Saadiq was therefore prohibited from possessing a firearm, and he violated section 724.26 by doing so.

II. *Constitutional challenges.* Saadiq next contends that if section 724.26 applies to him, it is (a) unconstitutionally vague in not providing adequate notice of its applicability to persons convicted of aggravated misdemeanors, and (b) unconstitutional as applied because he was convicted without proof of knowledge by him that his aggravated misdemeanor conviction triggered a prohibition of firearm possession.

A. Saadiq argues that section 724.26 is unconstitutionally vague because the definition of "felony" in section 724.25 differs from the definition provided in section 701.-7. He contends that he and others convicted of crimes classified as aggravated misdemeanors in the statutes defining them

(*e.g.* § 714.2(3)) are without notice that their conviction is a "felony" for purposes of section 724.26. He further argues that persons of ordinary intelligence would be required to guess at the actual meaning of these differing definitions and would not suspect that "felony" in section 724.26 is any different from "felony" in section 701.-7.

■ We begin with a presumption of constitutionality. *State v. Aumann,* 265 N.W.2d 316, 319 (Iowa 1978). "The burden is upon the challenger to demonstrate beyond a reasonable doubt the existence of a constitutional violation. To sustain this burden the challenger must negative every reasonable basis which would support the statute. It is not for us to consider the wisdom or folly of any legislative act. We lack the power to declare a statute void unless it is plainly and without doubt repugnant to the provisions of the constitution upon which the constitutional challenge is based." *Id.* We have also stated, "Where the constitutionality of a statute is merely doubtful or fairly debatable, the courts will not interfere. Thus a statute will not be declared unconstitutional unless it clearly, palpably and without doubt, infringes the constitution." *Keasling v. Thompson,* 217 N.W.2d 687, 689 (Iowa 1974). In view of our reluctance to declare void a legislative enactment, invalidity must be shown beyond a reasonable doubt. *State v. Coppes,* 247 Iowa 1057, 1067, 78 N.W.2d 10, 16 (1956). " 'Mere difficulty in ascertaining [a statute's] meaning or the fact that it is susceptible of different interpretations would not render it nugatory.' " *Id.* at 1066, 78 N.W.2d at 16 (quoting *State ex. inf. Crow v. West Side Street Railway Co.,* 146 Mo. 155, 167–68, 47 S.W. 959, 961 (1898)). With these principles in mind, we examine Saadiq's vagueness argument.

Due process requires that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed.

888, 890 (1939). "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983). *See Coppes,* 247 Iowa at 1062, 78 N.W.2d at 14. The Court stated in *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227–28 (1972) (citations omitted):

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to "'steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked."

■ Thus to withstand a constitutional attack, a penal statute must satisfy two standards: "(1) it must give a person of ordinary intelligence fair notice of what is prohibited, and (2) it must provide an explicit standard for those who apply it." *State v. Pierce,* 287 N.W.2d 570, 573 (Iowa 1980). A statute failing in either of these respects is void on vagueness grounds. *Cf. Kolender,* 461 U.S. at 358, 103 S.Ct. at 1858, 75 L.Ed.2d at 909 ("we have recog-

nized recently that the more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement'").

■ In viewing the fair notice requirement of due process, we apply the legal fiction that all persons of ordinary intelligence are presumed to know the law. Iowa Code § 701.6. Thus if a statute has sufficient publication that it is discoverable by reasonable means and it contains "'ascertainable standards to determine what it proscribes, then the actor can be held criminally liable for his conduct.'" *Sound Storm Enterprises, Inc. v. Keefe,* 209 N.W.2d 560, 566 (Iowa 1973) (*quoting United States ex rel. Clark v. Anderson,* 356 F.Supp. 445, 450 (D.Del.1973)).

■ To determine the scope of section 724.26, one must read into it the definition of felony in section 724.25. A common tenet of statutory construction is that an entire act be considered, interpreting the various provisions in light of their relation to the whole. *Williams v. Osmundson,* 281 N.W.2d 622, 626 (Iowa 1979). When these two sections are read together, the sweep of the prohibition against firearm possession is clear. That a different definition of felony is found elsewhere in the code does not make vague the explicit definition in section 724.25. *See State v. Pierce,* 287 N.W.2d 570, 573 (Iowa 1980) ("The statute is not vague. The argument that a definition of crime which is otherwise clear is somehow made unclear because it departs from common law and prior statutes is novel and without support either in reason or authority."). We conclude persons of ordinary intelligence have fair warning that if convicted of a crime punishable by a term exceeding one year, they are prohibited from possessing firearms.

■ Saadiq also argues that section 724.-26 provides no guidelines for enforcement and therefore law enforcement officials can arbitrarily choose between the two defini-

tions of felony in determining whether a violation of section 724.26 has occurred. In support of this contention he alleges that "this was the first and only time" an aggravated misdemeanor conviction has been used as the predicate offense for a violation of section 724.26. He also cites the arresting officer's testimony that prior to arresting Saadiq, the officer consulted an assistant county attorney to determine if a charge of possession by felon could be based on Saadiq's prior theft conviction. Finally, Saadiq argues that his arrest occurred after incidents of hostility between the then Polk County Attorney and him. He cites these factors as illustrative of the inherent vagueness of the statute, leading to discriminatory and arbitrary enforcement.

We do not accept these arguments. Saadiq is not raising a claim of vindictive prosecution. *See State v. Moritz,* 293 N.W.2d 235, 241 (Iowa 1980). Instead, he is arguing that the statute itself is defective because it allows selective prosecution to occur. But many criminal statutes are to some extent subject to charging discretion. The guidelines for enforcing section 724.26 are simple and clear. Saadiq has not shown that the statute gives law enforcement officials or prosecutors the power to determine arbitrarily the scope of the prohibition. Two alternatives are not available to law enforcement officials, any more than they are available to those who would carry arms. Section 724.25, by its express terms, is the applicable definition.

B. Closely related to his vagueness argument, Saadiq argues that application of section 724.26 is unconstitutional because he lacked knowledge he was a "felon" for purposes of that section. To impose criminal liability in this circumstance, he argues, imposes liability without mens rea. He relies on a California Court of Appeals decision, *People v. Bray,* 52 Cal.App.3d 494, 124 Cal.Rptr. 913 (1975).

In *Bray* the defendant successfully argued that an instruction should have been given on mistake of fact because he was misinformed concerning his felony status

based on an out-of-state conviction. The *Bray* court cautioned, however, that its decision was limited to the "very unusual circumstances" of the particular case. *Id.* at 499, 124 Cal.Rptr. at 917. The California Supreme Court further limited the *Bray* opinion to its facts in *People v. Snyder,* 32 Cal.3d 590, 652 P.2d 42, 186 Cal. Rptr. 485 (Cal.Supp.1982):

Defendant relies primarily upon *People v. Bray* ... but that case is distinguishable. There defendant pleaded guilty in Kansas to being an accessory before the fact and was placed on two years summary probation, which he successfully completed. When he subsequently sought to register to vote, he filled out an explanatory form referring to a Kansas offense, and indicating that he was uncertain whether he had been convicted of a felony. He was permitted to vote. Seeking employment as a security guard, he stated that he had not been convicted of a felony but described the circumstances of his arrest and probation. The Bureau of Correction and Investigative Services registered him as a guard. On several other job applications he indicated his uncertainty as to his status while fully setting forth the circumstances of his arrest and probation.

....

In the present case, unlike *Bray,* defendant made no attempt to inform government officials of the circumstances of her conviction or to seek their advice regarding her correct legal status. *Id.* at 594–95, 652 P.2d at 45, 186 Cal.Rptr. at 488.

Snyder was convicted of possession of a concealed firearm by a convicted felon. The predicate felony was a prior conviction of the sale of marijuana. *Id.* at 592, 652 P.2d at 43, 186 Cal.Rptr. at 486. The facts supporting Snyder's theory of mistake were:

The marijuana possession charge resulted from a plea bargain not involving a jail or prison sentence. At the time the bargain was struck, defendant's attorney advised her that she was pleading guilty

to a misdemeanor. Believing that she was not a felon, defendant thereafter had registered to vote, and had voted. On one prior occasion, police officers found a gun in her home but, after determining that it was registered to her husband, the officers filed no charges against defendant.

*Id.*

Based on the postulate that ignorance of the law is no excuse, the *Snyder* court held

defendant was presumed to know that it is unlawful for a convicted felon to possess a concealable firearm. (Pen.Code, § 12021.) She was also charged with knowledge that the offense of which she was convicted ... was, *as a matter of law,* a felony. That section had prescribed a state prison term of from five years to life, and the express statutory definition of a "felony" is "a crime which is punishable with death or by imprisonment in the state prison."

*Id.* at 593, 652 P.2d at 44, 186 Cal.Rptr. at 487.

Saadiq contends his circumstances are similar to those in *Bray:* he too was allowed to apply for a gun permit. His situation, however, was not marked by affirmative misinformation as in *Bray.* Saadiq was told by his probation officer that he was not to have guns in his possession. Further, he was not allowed to enroll in the sheriff's gun safety course, a prerequisite to obtaining a gun permit. Iowa Code § 724.9 (1983).

■ The presumption provided in section 701.6 of our Code that all persons know the law means that

"[o]ne is obliged to discover whether his contemplated activity is criminal, and if he acts without such knowledge he runs the risk of violation and consequent criminal prosecution. He may not defend on the grounds that he did not know the act was forbidden."

*State v. Clark,* 346 N.W.2d 510, 512 (Iowa 1984) (*quoting* 4 J. Yeager & R. Carlson, *Iowa Practice* § 10, at 5 (1979). Only in rare circumstances when the legislature

has made knowledge of criminality an element of the offense charged does a defendant's ignorance become relevant. § 701.6; *Clark,* 346 N.W.2d at 512.

■ We have stated, "The elements of the offense readily appear when the definition is substituted for the term defined." *State v. Leisinger,* 364 N.W.2d 200, 202 (Iowa 1985). Thus the elements of the offense proscribed by section 724.26 are (1) conviction of an offense punishable by imprisonment exceeding one year and (2) possession, receipt, or transportation (3) of a firearm or offensive weapon. Saadiq seeks to interject an additional element of knowledge not provided by statute. *Cf., Leisinger,* 364 N.W.2d at 202 ("State ... not required to prove the defendant knew the weapon had characteristics that are proscribed" for conviction of possession of an offensive weapon (§ 724.3 (1981)). As stated in P. Johnson, *Criminal Law* 329 (1975):

When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.

*See* K. Dunahoo, *supra* at 296. This crime is one of general intent. *Snyder,* 32 Cal.3d at 592, 652 P.2d at 44, 186 Cal.Rptr. at 487; *see State v. Redmon,* 244 N.W.2d 792, 797 (Iowa 1976). Saadiq committed the crime when, after being convicted of a crime carrying more than a year of imprisonment, he intended to and did carry a firearm.

Our decision is in accord with that of the California court in *Snyder* as well as federal decisions under the federal statute proscribing firearm possession by convicted felons. 18 U.S.C.A.App. § 1202; 18 U.S.C. §§ 922–25 (1982). Defendant's knowledge that he was a felon for purposes of section 724.26 was not required. *United States v. Laymon,* 621 F.2d 1051 (10th Cir.1980);

*United States v. Powell,* 513 F.2d 1249 (8th Cir.), *cert. denied,* 423 U.S. 853, 96 S.Ct. 99, 46 L.Ed.2d 77 (1975); *United States v. Locke,* 542 F.2d 800 (9th Cir.1976).

■ Saadiq also argues that the trial court erred in refusing to give his requested instruction 6 quoting section 701.6 of the Iowa Code:

All persons are presumed to know the law. Evidence of an accused person's ignorance or mistake as to a matter of either fact or law shall be admissible in any case where it shall tend to prove the existence or nonexistence of some element of the crime with which the person is charged.

The trial court did not err in rejecting this instruction. Knowledge of felony status is not an element of this crime. The proposed instruction was unnecessary and likely to confuse the jury. *See State v. Kase,* 344 N.W.2d 223, 226–27 (Iowa 1984).

We will subsequently return to another of Saadiq's contentions relative to the conviction for possession of a firearm.

III. *Postconviction relief.* Saadiq separately challenges the trial court's denial of postconviction relief from his prior third-degree theft conviction, based on lack of advice by his counsel in that case and lack of information given by the court. He pled guilty understanding that third-degree theft is an aggravated misdemeanor. He argues that he pled on the advice of counsel and counsel's failure to inform him that under section 724.25 his conviction would be a felony for purposes of section 724.26, and failure of the court so to inform him, constituted incomplete and therefore inaccurate advice and information.

■ Neither defense counsel nor the court may *misinform* a defendant regarding collateral consequences of a guilty plea. *Meier v. State,* 337 N.W.2d 204, 207 (Iowa 1983). If the subject of the misinformation is of substantial importance to the defendant and is considered by him in deciding to plead guilty, the plea is involuntarily and invalid. *Strader v. Garrison,* 611 F.2d 61,

63 (4th Cir.1979); *see Meier,* 337 N.W.2d at 207.

■ We do not agree that the characterization of third-degree theft as an aggravated misdemeanor, without more, is misinformation. The sentencing court and Saadiq's then counsel merely informed Saadiq (as section 714.2(3) provides) that third-degree theft is an aggravated misdemeanor. Failure to inform of the additional consequence that Saadiq could not possess the firearm because the conviction carried a maximum penalty of more than one year does not make the information which was given inaccurate. The question is not one of *misinformation;* instead it is one of whether counsel or the judge went *far enough* in informing Saadiq.

To the extent that Saadiq alleges the sentencing court failed to inform him fully of the consequences of his plea, he implicates the due process clause of the fourteenth amendment to the United States Constitution. As stated in *State v. Boone,* 298 N.W.2d 335, 337 (Iowa 1980) (citations omitted):

A defendant who enters a plea of guilty waives several constitutional rights. For the waiver to be valid under the Due Process Clause ... there must be an intentional relinquishment of known rights or privileges. If a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of constitutional guarantees of due process and is therefore void. The defendant must have a full understanding of the consequences of a plea before constitutional rights can be waived knowingly and intelligently.

■ To insure that the requirements of the fourteenth amendment are satisfied, we have required strict adherence to our guidelines in rule 8 of the Iowa rules of criminal procedure. *See also Boykin v. Alabama,* 395 U.S. 238, 243–44, 89 S.Ct. 1709, 1712–13, 23 L.Ed.2d 274, 279–80 (1969); *State v. Sisco,* 169 N.W.2d 542, 548–51 (Iowa 1969). The sentencing court must insure the defendant understands the "direct consequences of the plea including

the possible maximum sentence, as well as any mandatory minimum punishment." *State v. Rand,* 268 N.W.2d 642, 648 (Iowa 1979) (citations omitted). Judges are not required, however, to inform defendants of all indirect and collateral consequences of guilty pleas. *Strader,* 611 F.2d at 63 ("The imposition of a sentence or sentences may have a number of collateral consequences, and a plea of guilty is not rendered involuntary in a constitutional sense if the defendant is not informed of all of the possible indirect and collateral consequences"); *Meier,* 337 N.W.2d at 207. *See e.g., State v. Christensen,* 201 N.W.2d 457, 459 (Iowa 1972) (court not required to advise defendant of possibility of suspended sentence, parole, or effect of conviction on a future conviction); *State v. Woolsey,* 240 N.W.2d 651, 653 (Iowa 1976) (court not required to inform defendant of ineligibility for deferred judgment or suspended sentence and probation as consequence of his prior convictions); *Warner,* 229 N.W.2d 776 at 782 (Iowa 1975) (court need not advise defendant of penal consequences of companion charge, or the effect of guilty plea in instant charge on the strength of prosecutor's proof in companion case); *State v. Watts,* 186 N.W.2d 611, 617 (Iowa 1971) (not required to advise defendant that charge could be used as basis for parole revocation).

■ We have stated:

"The distinction between 'direct' and 'collateral' consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment."

*Warner,* 229 N.W.2d at 782 (*quoting Cuthrell v. Director, Patuxent Institution,* 475 F.2d 1364, 1365–66 (4th Cir.), *cert. denied,* 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973)). Because the prohibition of firearm possession in section 724.26 is clearly a collateral consequence of Saadiq's third-degree theft conviction, we reject his argument the sentencing *court* had to inform him of it.

■ Saadiq argues his *counsel* was derelict as to pre-plea advice because he failed to inform Saadiq of the consequence under the firearm statute. "The court's inquiry is intended to supplement but not supplant advice of counsel." *State v. Rhodes,* 243 N.W.2d 544, 545 (Iowa 1976). Counsel's duties in connection with a defendant's guilty plea include advising the defendant of available alternatives and considerations important to counsel or the defendant in reaching a plea decision. *State v. Christensen,* 201 N.W.2d 457, 459 (Iowa 1972). On review of a claim of ineffective assistance of counsel, "we make an independent evaluation of the totality of the relevant circumstances; this is equivalent of a de novo review." *Taylor v. State,* 352 N.W.2d 683, 684 (Iowa 1984).

■ We stated in *Meier,* 337 N.W.2d at 206 (citations omitted):

When the claim is grounded on counsel's failure to take some action, the claimant must demonstrate (1) counsel failed to perform an essential duty, and (2) prejudice resulted. Claimant must satisfy this burden by a preponderance of the evidence, and rebut the presumption of counsel's competence.

The first prong of the test requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). More specifically, the court stated in *Hawkman v. Parratt,* 661 F.2d 1161, 1170 (8th Cir. 1981) (citations omitted):

A guilty plea must represent the informed, self-determined choice of the defendant among practicable alternatives; a guilty plea cannot be a conscious, informed choice if the accused relies upon counsel who performs ineffectively in advising him regarding the consequences of entering a guilty plea and of the feasible options. To prove that counsel was ineffective, the ... petitioner must demonstrate that the advice was not within

the range of competence demanded of attorneys in criminal cases.

Under this test, counsel must inform the defendant concerning the direct consequences of a guilty plea. But counsel is not ordinarily required to advise specifically of indirect or collateral consequences; such a requirement would call for conduct beyond the range of normal competency. *Strader*, 611 F.2d at 63; *see Meier*, 337 N.W.2d at 207.

■ The record contains nothing to indicate Saadiq questioned his counsel concerning the effect of his conviction on his right to possess firearms or that his counsel had any idea possessing a firearm was a concern of Saadiq. Counsel can hardly conceive all possible collateral consequences of a guilty plea and need not be a crystal gazer. Viewing the totality of the circumstances, this record demonstrates that Saadiq's counsel acted within the range of normal competency.

We thus hold that Saadiq has not established his prior conviction is infirm. In light of this conclusion we do not reach the issue whether an invalid but unchallenged conviction punishable by imprisonment in excess of one year can be the basis of a violation of section 724.26. *See Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980); *cf. State v. Cooper*, 343 N.W.2d 485 (Iowa 1984); K. Dunahoo, *supra*, at 573.

■ IV. *State's strike of prospective juror.* Returning to the trial of the possession charge, a black person was called as one of the prospective jurors. After challenges for cause were ruled on, the prosecution and the defense each had to strike off four prospective jurors, under rule 17(9) of our rules of criminal procedures. With his fourth strike, the prosecutor removed the black person from the jury. Saadiq, himself black, objected and now objects on the ground that the prosecutor acted unconstitutionally in removing the black person. At the time of the trial the courts of this state applied *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

A record of the jury selection at the trial was not contemporaneously made, but a record was made immediately afterward as to this prospective juror. It follows:

The Court: All right, Mr. Parrish [defense counsel], you may proceed.

Mr. Parrish: Yes, your Honor. In going over the strikes by the Assistant County Attorney, his fourth preemptory strike—fourth strike was Leonard Riff, who is the gentleman seated in the top row to the right, who is a black individual, and there have been two cases recently from the—one from the Supreme Court, Illinois, I guess it went up to the U.S. Supreme Court, where they said preemptory challenge or strike merely to exclude a black person merely because the defendant is black is unconstitutional.

Further, there is a policy statement of the Polk County Attorney's office that was issued, that I received a copy of since I have an access to their policy manual, which says that simply because a defendant is black, that a black juror is not to be stricken from the record.

We did not make a record at the time that the individual was being questioned. He, along with all of the other people, indicated that they knew Mr. Saadiq. He never met Mr. Saadiq personally, he had only observed him, and based upon that, your Honor, there would be absolutely no reason why the Assistant County Attorney would choose to strike Mr. Riff; and therefore, we are going to object on the constitutional grounds that the State of Iowa, through Mr. Williams, is seeking to deprive Mr. Saadiq of his constitutional right to a full and fair trial by striking the only black juror in Polk County where the population is only about 15 percent.

It is indeed rare to get a black juror to this point, and have Mr. Williams begin to strike them for no reason other than the question that he was asked this juror, unless it is for some other reason that he feels he cannot get a fair trial from Mr. Riff, that this juror not be

striken from the record, and we would be allowed to proceed and he undo his strike and we start over again, and we redo this strike in order to keep Mr. Riff on the jury.

The Court: Mr. Williams, of course, does have the opportunity to respond to that for the reasons he did strike the juror.

Mr. Williams (prosecutor): I do not think, your Honor, I am required to give my reasons as to why I struck this particular juror. I do not believe any statute or any Supreme Court cases told me, so I am not going to give my reasons unless required to do so by this Court, and if that be the case, I would ask for a recess that I be properly represented, if I have to. I believe I do not have to give my reasons.

The Court: No, I agree to that, Counselor, you do not have to give your reasons. I assume the Court can only assume you struck that particular juror for reasons of your own after voir dire.

Mr. Williams: That is correct, your Honor.

The Court: Of course, Mr. Parrish has his right to question that.

The Court is only going to accept the fact that apparently you had proper grounds for striking that particular juror. I do recall that they knew the defendant, this individual particularly—I am sure it is the gentleman over here—is acquainted with or knew the defendant, I believe; however, that they live in the same neighborhood; isn't that correct?

Mr. Parrish: He said he had seen him at the park in his neighborhood, not that they live in the same neighborhood.

The Court: Oh, perhaps I misunderstood that.

Well, I am sure the Court must make a ruling on that. The intentions of Mr. Williams are proper in his selection of the jury, limited to four strikes under the circumstances, and that he did so as a result of his own determination as to the qualifications of that particular juror based upon the voir dire that he conducted in this particular trial.

I can appreciate Mr. Parrish's concern, and I think that he had a right to point that out to the Court, but I do feel that under the circumstances Mr. Parrish may be assuming a little bit by that particular strike, and I am sure that if Mr. Williams, being a competent practicing lawyer here in Polk County, would not have done so, especially under the rules of the County Attorney's office and the question of whether or not it is unconstitutional to strike a black individual from a jury in the event the defendant is black.

However, we have to assume an awful lot to determine that the plaintiff's attorney, Mr. Williams, struck that arbitrarily or for the purpose of the fact or only that he was black and for no other reasons, and that in itself, for no reason, would be unconstitutional, but the Court has no evidence here that it was intentional for that purpose only, so I am going to have to overrule that objection, Mr. Parrish.

Mr. Williams: Your Honor, can I make the record just a little bit clearer? It should be noted this is my fourth strike. If I was going to strike Mr. Riff solely because of his race, I believe I would have done it my first strike.

That is not the case. I did not strike Mr. Riff because of his race. I make that presentation to the Court.

The Court: If we are assuming these things, I think that would probably be a valid statement.

Mr. Parrish: Your Honor, my record is that our allegation is that he struck him only because he was black and that the defendant was black. At this point, he having rested on the record, he has produced no evidence to the contrary.

At this time we would ask the Court, based upon the record made by the prosecution, to, number one, dismiss this trial on the basis that the State has presented no evidence why the juror was in fact struck, number one, and number two, we would move for a—that this juror be

reinstated on the basis that the State has produced no reason other—and said it will not produce any reason why this juror was in fact struck.

The Court: Well, failure of the State to produce reasons or any other excuses for the reason for dismissing or striking a particular juror does not in itself make it unconstitutional.

Mr. Parrish, your allegations are, of course, made. The Court just cannot accept that the innuendoes, of course, you are making, Mr. Parrish, that there was some calculated reason based on the racial question that—or for purposes of this particular trial, a prejudicial question as far as the defendant is concerned because this gentleman was subject to the fourth strike of the State.

I cannot alone, sir, indicate or accept the fact that that is unconstitutional. Your comments are well noted. They are in record. The Motion for Dismissal will be overruled.

Subsequent to this criminal trial the United States Supreme Court decided *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The portion of that opinion which is material here follows:

The standards for assessing a prima facie case in the context of discriminatory selection of the venire have been fully articulated since *Swain. See Castaneda v. Partida,* [430 U.S. 482], at 494–495 [97 S.Ct. 1272, at 1280, 51 L.Ed.2d 498] (1977); *Washington v. Davis,* [426 U.S. 229], at 241–242 [96 S.Ct. 2040, at 2048–49, 48 L.Ed.2d 597] (1976); *Alexander v. Louisiana,* [405 U.S. 625], at 629–631 [92 S.Ct. 1221, at 1224–26, 31 L.Ed.2d 536] (1972). These principles support our conclusion that a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, *Castaneda v. Partida,* [430 U.S. 482], at 494 [97 S.Ct. 1272, at 1280, 51 L.Ed.2d 498] (1977), and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Avery v. Georgia,* [345 U.S. 559], at 562 [73 S.Ct. 891, at 892, 97 L.Ed. 1244] [1953]. Finally, the defendant must show that these facts and any other relevant circumstances that raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising *voir dire,* will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges create a prima facie case of discrimination against black jurors.

Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. *See McCray v. Abrams,* 750 F.2d [1113],

at 1132 [2 Cir.1984]; *Brooker v. Jabe,* 775 F.2d 762, 773 (CA6 1985), cert. pending 85–1028. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race. Cf. *Norris. v. Alabama,* 294 U.S. [587], at 598–599 [55 S.Ct. 579, at 583–84, 79 L.Ed. 1074] [1935]; see *Thompson v. United States,* — U.S. ——, —— [105 S.Ct. 443, 444, 83 L.Ed.2d 369] [1986] (Brennan, J., dissenting from denial of certiorari). Just as the Equal Protection Clause forbids the States to exclude black persons from the venire on the assumption that blacks as a group are unqualified to serve as jurors, *supra,* at 5, so it forbids the States to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black. The core guarantee of equal protection, ensuring citizens that the State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' race. Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or "affirming his good faith in individual selections." *Alexander v. Louisiana,* 405 U.S., at 632 [92 S.Ct., at 1226]. If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause "would be but a vain and illusory requirement." *Norris v. Alabama, supra,* [294 U.S.], at 598 [55 S.Ct., at 583–84]. The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

—— U.S. at ——, 106 S.Ct. at 1722–23. The Court did not instruct trial courts how to implement its holding in *Batson.* Cf. 106 S.Ct. at —— n. 24, 106 S.Ct. at 1724 n. 24 (Stating in part: "In light of the variety of jury selection practices followed in our state and federal courts, we make no attempt to instruct these courts how best to implement our holding today."). We are required to make an appropriate disposition of this appeal, but we are confronted by a record which indicates that the trial court was proceeding under prior law. We have concluded to affirm the judgment and sentence in all respects except as to the prosecutor's striking the prospective juror. As to that issue we return the case to district court for a hearing on the present record and on such additional record on that issue as the parties or either of them cares to make. The district court is directed then to find under *Batson* whether the prosecutor did or did not purposefully discriminate in striking the black prospective juror from the jury. If the district court finds that the prosecutor did not purposefully discriminate, the court is directed to confirm the judgment and sentence, and Saadiq will have the right to appeal. If the court finds that the prosecutor did purposefully discriminate, the court is directed to order a new trial, and the State will have the right to appeal.

AFFIRMED IN PART AND REMANDED WITH DIRECTIONS.