Duane Eddie WRIGHT–BEY, Applicant–Appellant,

v.

STATE of Iowa, Resister–Appellee.

No. 88–17.

Court of Appeals of Iowa.

May 23, 1989.

Stephen J. Rapp, Waterloo, for applicant-appellant.

Thomas J. Miller, Atty. Gen., Sarah J. Coats, Asst. Atty. Gen., and Scott Lemke, Asst. County Atty., for resister-appellee.

Considered by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ., but decided en banc.

SACKETT, Judge.

In this appeal from denial of postconviction relief we address the claim of defendant, a black man, he was denied effective assistance of counsel because his trial attorney failed to challenge the State's peremptory challenges which excluded the only two nonwhite persons from the jury panel. Because we find defendant has failed to meet his burden of showing if the challenge had been made there was a reasonable probability the outcome of his trial would have been different, we affirm his conviction.

Defendant in 1984 was tried and convicted of first-degree murder. His postconviction challenge deals exclusively with the jury selection procedure. The parties agree the jury selection process proceeded as follows: The names of thirty-two persons were drawn as jurors. No one was excused for cause. The State had ten strikes and the defendant had ten strikes. Of the thirty-two persons on the panel, two were nonwhites. One nonwhite was a woman of Korean ancestry and the second was a black man. Two of the ten State's strikes were used to strike the woman of Korean ancestry and the black man. No challenge was made to the jury selection procedure.

Two persons testified at the postconviction proceedings. Defendant's trial attorney testified in his behalf and the former Black Hawk County Attorney who handled defendant's trial testified for the State. Defendant also introduced the report of an investigator who had identified the race of the thirty-two persons drawn as jurors.

Defendant's trial attorney testified he had been involved in criminal defense work in Black Hawk County since 1975. During some of that period he was involved to an extensive degree and at other times he was involved to a lesser degree in the defense of persons charged with criminal offenses. He had represented defendants in at least three murder trials and had considerable involvement in other cases, including a number of Class A felonies. In the course of his exposure to the criminal practice in Black Hawk County, he was only aware of one time when a black served as a juror in a criminal trial and the black who served as a juror had a brother in the Black Hawk County Attorney's office. Based on his observations, it was his opinion the Black Hawk County Attorney's office would use its strikes to strike black jurors when blacks were on the panel. He further testified there were not as many blacks on jury panels as are seen on the streets and in stores. He testified when both nonwhites were stricken from defendant's jury panel he felt it was not fair but did not object.

The former county attorney testified he generally kept notes on jury selection but his notes on the selection of this panel could not be located. No reasons were offered by him for striking the nonwhite jurors. He did not recall any black persons on the panel. He said in exercising his strikes he generally considered education, stability, prior legal difficulties and knowledge of the parties and witnesses. He said at the time of trial his office had no policy on blacks serving as jurors in Black Hawk County.

The county attorney was asked about blacks on panels. He said he never knew of more than four having their names

drawn for any one trial. He was in the Black Hawk County Attorney's office for about seven years and said he had several cases where blacks served on juries.

In *Batson v. Kentucky*, 476 U.S. 79, 96–98, 106 S.Ct. 1712, 1716–17, 90 L.Ed.2d 69, 87–88 (1986), the U.S. Supreme Court determined a defendant establishes a prima facie case of discriminatory selection of the jury panel where (1) the defendant has shown him or herself a member of a cognizable racial group, *see Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498, 510, 1280 (1977), and (2) the State's attorney has exercised peremptory challenges to remove from the jury panel members of defendant's race. Once the defendant has made these showings, the State has the burden to come forward with a neutral explanation for challenging the jurors. In *Saadiq v. State*, 387 N.W.2d 315 (Iowa 1986), the Iowa court applied the dictates of *Batson* and remanded to the trial court for a hearing to determine whether the prosecutor did or did not purposely discriminate in striking a black juror. *Saadiq*, 387 N.W.2d at 329.

■ Defendant recognizes and we find the dictates of *Batson* are not applicable to this challenge. In *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649, 661 (1987), the court determined the rule in *Batson* was only applicable to litigation that was pending on direct state or federal review or was not yet final when *Batson* was decided on April 30, 1986. *See also Teague v. Lane*, 489 U.S. ——, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Procedendo was filed in this case on December 5, 1985, following the denial of defendant's appeal by the Iowa Supreme Court. This appeal, therefore, is governed by the dictates of an earlier case, *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), unlike *Saadiq*,[1] 387 N.W.2d at 315, where the issue of the jury selection was not addressed on direct appeal until May 1986.

In *Garrett v. Morris*, 815 F.2d 509 (8th Cir.1987), the 8th circuit was confronted with a challenge to the State of Missouri's use of peremptory challenges to exclude all black jurors from a petit jury panel at Garrett's first-degree murder trial. The court determined the dictates of *Swain* were applicable and clearly articulated the burden a defendant carries under *Swain* when they said:

> Under *Swain*, a defendant can make out a prima facie case of purposeful discrimination on proof that the prosecutor perverted the peremptory-challenge system by using his challenges "to exclude blacks from the jury 'for reasons wholly unrelated to the outcome of the particular case on trial,' or to deny to blacks 'the same right and opportunity to participate in the administration of justice enjoyed by the white population.'" *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 1720, 90 L.Ed.2d 69 (1986), *quoting Swain*, 380 U.S. at 224, 85 S.Ct. at 838. *Swain nevertheless does not require an inquiry into a prosecutor's reasons for exercising his challenges in any particular case, holding instead that a presumption exists that the prosecutor is using the State's challenges to obtain a fair and impartial jury.* 380 U.S. at 222, 85 S.Ct. at 837. *That presumption may be overcome by showing that the prosecution has systematically excluded blacks* from petit juries over a period of time, *id.* at 223–24, 85 S.Ct. at 837–38, but a defendant cannot, under *Swain*, establish an equal-protection violation "solely on proof of the prosecutor's use of peremptory challenges to strike black jurors at the defendant's own trial." *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 710, 93 L.Ed.2d 649 (1987).

*Garrett*, 815 F.2d at 511 (emphasis added).

Additionally, a defendant can raise an inference of purposeful discrimination if he or she shows the prosecutor in the county where the trial was held "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or

---

**1.** *Saadiq* was a consolidation of a direct appeal and an appeal from the denial of a petition for postconviction relief.

the victim may be," has been responsible for the removal of qualified blacks who had survived challenges for cause, with the result that no blacks ever served on petit juries. *Swain*, 380 U.S. at 223, 85 S.Ct. at 837, 13 L.Ed.2d at 774.

In examining defendant's challenge, we start with the presumption the State used its strikes to obtain a fair and impartial jury. *Swain*, 380 U.S. at 222, 85 S.Ct. at 837, 13 L.Ed.2d at 773. Defendant to overcome the presumption must show the State has systematically excluded blacks from juries over a period of time. *Swain*, 380 U.S. at 223–24, 85 S.Ct. at 837–38, 13 L.Ed.2d at 774. Defendant contends he has done this by showing through his trial attorney the practice of the Black Hawk County attorney's office was to strike all blacks. The State argues defendant did not meet his burden because defendant's evidence did not particularly deal with the cases tried by the county attorney who prosecuted defendant.

We look at the conduct of the county attorney's office in Black Hawk County in total. The office operates under the direction of the county attorney. *See* Iowa Code § 331.756 (1987). The county attorney is the one in whom official discretion and power are vested and his assistants operate under his supervision and direction.

The State next contends we should discount the testimony of defendant's trial attorney because his testimony does not refer to specific cases. We find the two attorneys testifying each has had substantial contacts with criminal trials in Black Hawk County. Neither attorney named a specific trial where nonwhites served or were stricken as jurors. We find their testimony to be very similar. Both men are credible witnesses. We recognize neither has named specific cases. Identifying nonwhite jurors on other Black Hawk county panels is difficult. The racial identity of the panel members here was learned only after an investigator had made contact with each juror and/or a person or persons who knew each juror. From the testimony of both attorneys we determine situations where nonwhites have served on criminal juries in Black Hawk County have been practically nonexistent.

Having found few nonwhites to have served on jury panels in Black Hawk County, we must decide whether defendant has shown this exclusion is the result of the State's systematic exclusion of nonwhites over a period of time. *See Swain*, 380 U.S. at 223–24, 85 S.Ct. at 837–38, 13 L.Ed.2d at 774–75. The State argues defendant has not because the exclusion of only two nonwhites from the panel did not show a pattern.

The State by excluding the two nonwhites excluded all the minorities. When there are only two nonwhites on a panel, striking the two nonwhites is very significant because it changes the panel from a panel with minority representation to a panel with *no* minority representation. When there are few minorities on a panel, it is significant when even one is stricken. Having determined the two strikes were significant because of the absence of minorities on the panel, we must consider panel composition in our assessment.

Defendant raised in the trial court a second ineffective assistance claim based on his trial attorney's failure to challenge the jury panel because the Black Hawk County auditor failed to comply with changes made in 1976 Iowa Acts chapter 1235 which increased the population base from which jury panels are chosen. *See Cooper v. State*, 379 N.W.2d 917, 918 (Iowa 1986). Said changes were thought to further assure a defendant a jury drawn from a representative cross section of the community and a jury which did not systematically exclude an identifiable segment of society. *See Taylor v. Louisiana*, 419 U.S. 522, 527, 95 S.Ct. 692, 696, 42 L.Ed.2d 690, 696 (1975); *Apodaca v. Oregon*, 406 U.S. 404, 413, 92 S.Ct. 1628, 1634, 32 L.Ed.2d 184, 193 (1972).

Defendant has argued this issue on appeal only to preserve the issue for further review in the federal court. Defendant recognizes the Iowa court in *Cooper*, 379 N.W.2d at 918–19, rejected defendant Cooper's contention the use of the incorrect procedure for selection of a jury in Black

Hawk County required a reversal of his conviction. *Id.* *Cooper* did not address the issue of racial imbalance but dismissed Cooper's challenge because he showed no prejudice and nothing more than violation of the statute. *Cooper*, 379 N.W.2d at 318–19. The defendant has not asked us to consider on the issue of racial imbalance the failure of Black Hawk County to follow statutory directives.

We determine defendant has met the burden of showing a pattern in Black Hawk County of excluding blacks from criminal jury service in case after case. We find except in rare cases minorities are stricken on peremptory challenges.[2] The State has not rebutted the presumption and offered a genuine, constitutionally permissible trial-related reason for taking both nonwhites off defendant's jury panel. *See Garrett*, 815 F.2d at 511. In fact, the State has offered no reason for taking the jurors off.[3]

In making this determination we recognize the population of this state includes a relatively small percentage of minorities. The scarcity of minorities contributes in a large part to their absence from jury panels particularly in the rural areas of this state. Black Hawk County, however, has the cities of Cedar Falls and Waterloo and there are a significant number of nonwhites in Black Hawk County. A black person is a member of a minority in this state. A jury chosen to decide his fate should not harbor or exercise racially discriminatory prejudices toward him. The chances such prejudices may be overt is significantly lessened when the jury panel represents diverse backgrounds.

Defendant's trial attorney bluntly summarized the need for nonwhite jurors when the defendant is a nonwhite when he said:

> [A]nd when they (black jurors) do appear, at least I'm always happy to see them, which stops the overt racism which we still have in Waterloo, 'Well the nigger must have done it.' When there is a black on the jury they can't say that, so

I'm always happy when I see them on the panel and they get struck by the State, you know, it always, 'there it goes.'

▇ Our inquiry does not end here. A *Swain* claim not raised on direct appeal cannot be raised for the first time in collateral proceedings unless the defendant can show cause for the default and prejudice resulting therefrom. *See Teague v. Lane*, 489 U.S. ——, ——, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334, 347 (1989). *See also Wainright v. Sykes*, 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2507–2509, 53 L.Ed.2d 594, 608–11 (1977). Defendant contends the issue was not raised at trial because his trial counsel was not effective. In order to prevail on a claim of ineffective assistance of counsel defendant must show a specific act or omission where "(1) counsel failed to perform an essential duty, and (2) prejudice resulted therefrom." *State v. Miles*, 344 N.W.2d 231, 233–34 (Iowa 1984).

▇ To establish prejudice, defendant must show there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Defendant does not argue nor has he attempted to establish but for the failure to object to the challenge to the nonwhite jurors the result would have been different. Defendant failed to meet the second prong of a claim of ineffective assistance of counsel. We therefore must affirm the conviction.

We recognize jury selection in this case predates *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Cooper v. State*, 379 N.W.2d at 917. These cases should result in greater minority representation on jury panels. We trust we will see greater involvement by nonwhites on jury panels in Black Hawk County.

---

**2.** Obviously, the problem is magnified by the general absence from panels of black jurors.

**3.** The only reason advanced was by one of the jurors who told the investigator she may have been taken off because of a language problem.

Because of our small minority population we may have to take additional affirmative steps to assure minority representation on jury panels, particularly where a nonwhite is a defendant or litigant. We are a state whose courts have lauded their fair treatment of minorities and sensitivity to the problems of minorities.[4] Our strong history of fairness demands constant vigilance.

AFFIRMED.

All Judges concur except
SCHLEGEL, P.J., who dissents;
HABHAB, J., who specially concurs.

SCHLEGEL, Judge (dissenting).

I certainly applaud the conclusion of the majority in its determination that the defendant has met the burden of showing a pattern in Black Hawk County of excluding blacks from criminal jury service. I agree that the showing is in accord with the holding in *Garrett v. Morris*, 815 F.2d 509 (8th Cir.1987), where the court held that the presumption that the prosecutor is using the State's challenges to obtain a fair and impartial jury may be overcome "[b]y showing that the ·prosecution has systematically excluded blacks from petit juries over a period of time." *Id.* 380 U.S. at 223–24, 85 S.Ct. at 837–838, 13 L.Ed.2d 774–775.

After taking this courageous stand, however, the majority applies the well-known test of *State v. Miles*, 344 N.W.2d 231, 233–34, and *Washington v. Strickland*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984), for the proposition that even if the defendant's counsel was wrong in failing to make the objection to the jury panel, the defendant has failed to show there is a reasonable probability the result of the proceeding would have been different. Furthermore, the majority allows the limitation of *Griffith v. Kentucky*, 479 U.S. 314, 318, 107 S.Ct. 708, 716, 93 L.Ed.2d 649, 661 (1987), to hold that the *Batson* doctrine cannot apply retroactively.

I submit that if, as the U.S. Supreme Court has recognized in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, 87–88 (1986), the effort to determine the prosecutor's practice in all cases was too difficult, surely it is not reasonable to require the defendant to prove that had his counsel objected to the jury panel, resulting in a new and different jury, that jury would have given him anything more than a fair trial. Asking a defendant to prove that but for the error of his counsel in this type of case, he would have been acquitted is far beyond his ability. The result, then, is that if such an objection is made at trial, the defendant's rights are preserved, whereas, if his counsel fails to raise the issue, the defendant cannot make the requisite showing and his rights are forever lost. In this type of case, the two-pronged test of *Strickland* is inappropriate.

In *Teague v. Lane*, 489 U.S. ——, ——, 109 S.Ct. 1060, 1072–1073, 103 L.Ed.2d 334, 353 (1989), the United States Supreme Court adopted the philosophy of Justice Harlan in *Mackey v. United States*, 401 U.S. 667, 689, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971): "It is 'sounder, in adjudicating habeas petition, generally to apply the law prevailing at the time a conviction became final than to seek to dispose of [habeas] corpus on the basis of intervening changes.'" He went on to identify only

---

**4.** The state of the Iowa judiciary address (delivered by the Honorable Arthur A. McGiverin, Chief Justice of the Supreme Court of Iowa, before a joint convention of the seventy-third general assembly January 11, 1989.) * * * Last year, we Iowans celebrated the 150-year anniversary of our territorial government. The judicial branch commemorated this anniversary by looking back upon 150 years of justice—150 years of leading the nation in protecting the rights of our citizens. Let us briefly consider some of these decisions. * * * In 1839, 24 years prior to the signing of the emancipation proclamation, the Iowa Supreme Court, in its first case, determined that freedom in this state extended to everyone and when a slave was brought here that person thereby became free; In 1868, the court ruled that a child could not be refused admission to a common school "because of his or her color, nationality, religion or the like;" In 1869, our court became the first in the nation to admit a woman to the practice of law; and In 1873 the court ruled that racial discrimination in public accommodations violated the constitutional right to equal protection of the laws. There also have been many other hallmarks of justice in Iowa over the years that are too numerous to mention.

two exceptions to his general rule of nonretroactivity for cases on collateral review (habeas corpus actions). The second exception—relevant here—is explained as follows:

> A new rule should be applied retroactively if it requires the observance of "those procedures that … are implicit in the concept of ordered liberty." (Citation omitted.)

*Teague,* 489 U.S. at ——, 109 S.Ct. at 1075, 103 L.Ed.2d at 356.

What is the "concept of ordered liberty" to a black person subjected to the discriminatory practice of the preemptory challenge of all black veniremen, is quite likely different than that concept of ordered liberty to a white person seated in front of an all-white jury. The need for a retroactive application of *Batson* is required in this case.

I note the footnote at the end of the opinion of the majority, and celebrate with the majority the history of Iowa's leadership in the field of equal rights for all its citizens. I would continue that same leadership in this case and would grant the defendant a new trial, free from the pall of discrimination, by practices which both diminish his right to a fair trial and degrade his race.

I would reverse and remand for a new trial.

HABHAB, Judge (specially concurring)

I specially concur.