Clyde COX, Applicant–Appellant,

v.

STATE of Iowa, Respondent–Appellee.

No. 95–0667.

Court of Appeals of Iowa.

Aug. 30, 1996.

Ronald Wheeler, Des Moines, for Applicant–Appellant.

Thomas J. Miller, Attorney General, Ann E. Brenden, Assistant Attorney General, John P. Sarcone, County Attorney, and Steve Foritano, Assistant County Attorney, for Respondent–Appellee.

Considered by SACKETT, C.J., and HABHAB and HUITINK, JJ.

HABHAB, Judge.

Clyde Cox appeals from the denial of his application for postconviction relief. He alleges his trial and appellate counsel were ineffective. We affirm.

Cox was convicted, following his second jury trial, of first-degree murder. The first trial resulted in a hung jury. The court of appeals affirmed his conviction. *State v. Cox*, 502 N.W.2d 175 (1992). Cox filed an application for postconviction relief. He claimed his trial and appellate counsel were ineffective. His application was denied and he appeals.

**I. Ineffective Assistance of Trial Counsel.** Our review of an allegation of ineffective assistance of counsel is de novo. *State v. Howes*, 525 N.W.2d 874, 876 (Iowa App.1994). A defendant has the burden of proving by a preponderance of the evidence his attorney did not perform an essential duty, and as a result, he was prejudiced. *Id.* To demonstrate prejudice a defendant must prove there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. *State v. Tracy*, 482 N.W.2d 675, 680 (Iowa 1992). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

In alleging ineffective assistance, a defendant must overcome the strong presumption counsel was competent. *State v. Ray*, 516 N.W.2d 863, 865 (Iowa 1994). A reviewing court can deny an application for postconviction relief based on the failure to prove prejudice, without deciding whether counsel's representation was deficient. *See State v. McKettrick*, 480 N.W.2d 52, 56 (Iowa 1992); *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984).

**a) Change in Defense Strategy and Waiver of Fifth Amendment.** Cox did not testify at his first trial and a hung jury resulted. Cox claims he only spoke with his counsel once between the first and second trial and his attorney did not inform him of any change in strategy. Cox asserts he learned only during his attorney's opening argument at the second trial that his defense strategy had been changed and he would be expected to testify he had a .38 caliber handgun at the scene of the murder. Since the victim was killed with a .32, the defense theory was Cox, who had only a .38, could not have killed him. Cox contends he did not have any handgun with him at the scene of the murder and his trial counsel knew the defense strategy at the second trial was factually incorrect. Cox argues his counsel changed the defense strategy without consulting him and compelled him to testify and lie about his possession of a .38.

Defense counsel presented a diametrically different version of events. He testified at the postconviction hearing he had visited with Cox several times between the first and second trials. There were several witnesses in the first trial who testified defendant was in possession of a gun at the murder scene. Defense counsel discussed the various defense options available to Cox and advocated a self-defense strategy since the victim and defendant's girlfriend had been involved in a heated altercation immediately before the shooting.

Defense counsel testified it was Cox's decision to testify during his second trial and to testify he had previously destroyed his .32 caliber weapon and had only a .38 at the time of the murder. Defense counsel strongly denied he had encouraged Cox to perjure himself.

In denying the application for postconviction relief, the district court found Cox's claim that his defense counsel told him to lie to be "incredulous." The court found Cox had determined the defense he would pursue at both trials. The extensive colloquy which occurred before Cox testified supports the conclusion it was his uncoerced decision to testify during his second trial.

We give weight to the findings made by a postconviction court regarding the credibility of witnesses. *Wycoff v. State*, 382 N.W.2d 462, 465 (Iowa 1986). The postconviction court found Cox's claims "incredulous" regarding the change in defense strategy and his allegation his attorney told him to

lie. The court found trial counsel's version of the events to be credible, and we defer to those findings. *See id.* (appellate court defers to postconviction court's findings of credibility).

■ There was a great deal of evidence from several witnesses at the first trial which placed Cox at the murder scene with a weapon. The victim was shot with a .32 and there was evidence Cox owned a .32 and a .38. Cox had told his attorney his .32 had been destroyed prior to the death of the victim. Under these circumstances, it was a reasonable defense strategy to allow Cox to testify and admit his possession of a .38 and argue it was not that weapon, but another, a .32 belonging to someone else, which killed the victim. Courts will not second guess reasonable tactical decisions by trial counsel. *See Van Hoff v. State*, 447 N.W.2d 665, 670 (Iowa App.1989). Cox's claims of ineffective assistance with regard to the change in strategy and his decision to testify are baseless.

■ *b) Failure to Call Expert Witness.* Cox claims his trial counsel was ineffective in failing to call an expert to rebut the statement of the State's expert that .32 ammunition could be shot from a .38 if it were "shimmed up." At the postconviction hearing, Cox presented no independent evidence to establish a contrary expert opinion would exist. Absent such proof, he cannot prove prejudice. Cox has not carried his burden of proof with respect to this claim.

■ *c) Failure to Voir Dire Jury Regarding Prior Trial.* Cox's second trial began May 20, 1991. Earlier in the month, a trial had been held in which a white man, Mr. Breese, was acquitted of killing a black victim. The Breese trial generated extensive publicity critical of the jury's verdict. Cox claims three members of his second jury had served on the Breese jury. He apparently theorizes those jurors may have been predisposed to convict him since they had already "let another [white man] off."

Cox claims he discussed the Breese matter with his trial counsel, but counsel did not inquire about it during voir dire. Cox has again failed to prove prejudice. No evidence was elicited from the jurors who served on both his case and the Breese trial to establish whether their service in the Breese case could have affected their performance during his trial. Nothing in the record supports the argument Cox's jurors were predisposed to convict him. This argument is without merit.

■ *II. Ineffective Assistance of Appellate Counsel.* In his application for postconviction relief, Cox argues his appellate counsel was ineffective. "The right under the Sixth Amendment to the federal Constitution to effective assistance of counsel extends to the assistance of counsel on appeal." *Stringer v. State*, 522 N.W.2d 797, 799 (Iowa 1994). The same standards applied to trial counsel also apply in measuring the competency of appellate counsel. *Id.*

■ *a) Failure to Argue Ineffective Assistance of Trial Counsel.* Cox argues his appellate counsel was ineffective in failing to pursue a claim of ineffective assistance of trial counsel on direct appeal. Where it has already been determined trial counsel was not ineffective, appellate counsel breaches no duty in not raising the effectiveness of trial counsel as an issue on appeal. *See Luke v. State*, 465 N.W.2d 898, 904 (Iowa App.1990).

■ *b) Impeachment of Mr. Chaney.* During the second trial, Cox's attorney became aware a witness, Art Chaney, had a more extensive criminal record than had previously been disclosed. Cox claims his appellate counsel was ineffective in not challenging on direct appeal the refusal of the trial court to allow trial counsel to impeach Chaney with these additional offenses.

In a letter Cox sent his appellate counsel, he set forth numerous claims which he wished to have raised in his direct appeal. Appellate counsel raised only those issues on direct appeal which she felt were the strongest issues. She testified raising additional issues would dilute the effect of the three best issues upon which Cox could seek a reversal.

■ Appellate counsel must be discerning in the determination of those issues to be presented on appeal with an idea of presenting the most effective argument for the client. *Stringer*, 522 N.W.2d at 799.

A heavy professional responsibility devolves upon an appellate lawyer when it comes to assessing possible assignments of error. Of course error is waived if it is not assigned. On the other hand most experienced appellate lawyers or judges will attest it is a tactical blunder, often devastating to an appellant, to assign every conceivable complaint. Highly competent appellate lawyers generally assign only the strongest points and rely on them for reversal.

*Cuevas v. State,* 415 N.W.2d 630, 633 (Iowa 1987).

The issue of impeaching Chaney with additional offenses was not a strong issue. There appears to be no definitive ruling by the trial court on the admissibility of this evidence and, therefore, there was no ruling from which appellate counsel could appeal. Furthermore, the record was inadequate to make a determination as to whether Chaney's prior offenses were admissible under Iowa Rule of Evidence 609. Appellate counsel breached no duty in not pursuing this issue on appeal. In addition, defendant has failed to establish prejudice.

■ *c) Defendant's Letter to Son.* Cox alleges his appellate counsel was ineffective in not appealing the trial court's refusal to admit into evidence exhibit HH, a letter he had written his son shortly after he was arrested. Cox wanted to offer the letter to impeach his son's testimony he had not had contact with him since his arrest.

In excluding the letter, the trial court commented the letter was "self-serving." Presumably, this refers to the statement in the letter in which Cox claims he did not commit the murder for which he was charged. The jury was informed Cox had written his son and this refuted the son's testimony he and his father had not had any contact after the arrest. The letter served the impeachment purpose for which it was proffered even though it was not admitted into evidence. The court's reference to the letter as "self-serving" did not amount to such an egregious comment on the evidence as to be prejudicial. Appellate counsel breached no duty in not raising this issue on appeal.

 *d) Disruptions in Courtroom During Trial.* Cox's final claim of ineffective assistance pertains to his appellate counsel's decision not to raise an issue on appeal relating to disruptions which allegedly occurred in the courtroom during his second trial. The disruptions involved loud sighs and head shaking by spectators in the courtroom.

The record reveals the trial court acted properly and promptly in addressing counsel's concern about the disruptions. There is no indication any further disruptions occurred after the court cautioned those in the courtroom to behave. Appellate counsel breached no duty in not pursuing this issue further on appeal.

**AFFIRMED.**