**IN THE COURT OF APPEALS OF IOWA**

No. 15-0220
Filed July 27, 2016

**RANDY ALAN ZAABEL,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Webster County, Kurt J. Stoebe,

Judge.

A postconviction-relief applicant appeals the order denying his application.

**AFFIRMED.**

Clemens A. Erdahl of Nidey, Erdahl, Tindal & Fisher, P.L.C., Cedar

Rapids, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant

Attorney General, for appellee.

Heard by Potterfield, P.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Randy Zaabel was convicted of murder in the second degree and nonconsensual termination of a human pregnancy. We have twice affirmed his convictions, once on direct appeal and once on appeal from postconviction relief proceedings. *See Zaabel v. State (Zaabel II)*, No. 03-2056, 2004 WL 1899837, at *3 (Iowa Ct. App. Aug. 26, 2004); *State v. Zaabel (Zaabel I)*, No. 99-0770, 2001 WL 1130855, at *8 (Iowa Ct. App. Sept. 26, 2001). This case arises out of Zaabel's second application for postconviction relief. In this proceeding, Zaabel contends that his trial counsel was ineffective in failing to present certain evidence at trial and that the confession of another suspect constitutes newly discovered evidence entitling him to a new trial. Following trial, the district court denied Zaabel's second application for postconviction relief.

I.

Zaabel was charged with murder following Michelle Gibson's death on March 29, 1998. He was charged with nonconsensual termination of her pregnancy because Gibson's unborn child also died as the result of her injuries.

Gibson's body was discovered along Mining Boulevard, a rural Webster County road, by law enforcement officers responding to Zaabel's call for emergency assistance. Zaabel reported that he and Gibson were attacked there by one or more people he assumed were stranded motorists. According to Zaabel he was knocked unconscious during this encounter and awoke to find Gibson gravely injured, prompting his call for assistance. He speculated that Gibson might have known their assailants from her prior experience in the local drug culture.

The state medical examiner subsequently determined that Gibson died of massive head injuries inflicted by multiple blows from a wooden object, a portion of which was found in Gibson's hair. The medical examiner also determined that portions of Gibson's skull and brain were missing. Investigators did not find a murder weapon at the Mining Boulevard location, nor did the

physical evidence gathered there account for all of Gibson's missing skull fragments and brain tissue. Investigators, however, found blood and tissue on the muffler and rear tire wells of Zaabel's truck, suggesting Gibson may have been attacked elsewhere and moved to the location where her body was found.

On March 31, 1998, investigators asked Zaabel if they could examine any of Gibson's personal belongings remaining at his residence. Zaabel signed a written "permission for search and seizure" form authorizing the search of his residence, surrounding real estate, and motor vehicles located at his farmstead. During the course of this warrantless search, investigators found a bloodstained 2" x 2" piece of lumber protruding from a drainage tile on Zaabel's property and blood under or near a manure spreader parked on the property. As a result of these discoveries, investigators sought and obtained a search warrant authorizing an extended search of Zaabel's farmstead. The resulting search yielded additional skull fragments, brain tissue, wood, and wood splinters. Subsequent laboratory analysis and a second autopsy matched these items with those discovered at the Mining Boulevard scene and during Gibson's first autopsy.

*Zaabel I*, 2001 WL 1130855, at *1.

II.

Zaabel first argues his trial counsel was ineffective in failing to present certain evidence at trial. Zaabel has continued to correspond with his trial lawyers, Kevin Fors and Leonard Holland, post-conviction. Zaabel claims he has learned, since his first application for postconviction relief, Fors found additional blood and brain tissue left at the Mining Boulevard site after the police investigated the site but prior to Zaabel's trial. Fors took pictures of the blood and brain tissue and collected some of the brain tissue and kept it in his freezer. Zaabel claims Holland told Zaabel that Holland was unaware of Fors taking photographs of the tissue and was unaware of Fors collecting the tissue. According to Zaabel, the tissue is exculpatory because it shows the missing tissue, discussed at the first trial as evidence of movement of Gibson's body from

one site to another, was not actually missing. Zaabel claims his counsel was ineffective in failing to present this evidence to the jury.

We review claims of ineffective assistance of counsel de novo. *State v. Ondayog*, 722 N.W.2d 778, 783 (Iowa 2006). The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court has made the Sixth Amendment applicable to the states via incorporation through the Fourteenth Amendment. To prevail on his claim, Zaabel must show (1) that his "trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). Failure to prove either element is fatal to the claim. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003).

To determine whether counsel failed to perform an essential duty, we first decide if the representation dropped below an objective standard of reasonableness under prevailing professional norms. *See Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014). The defendant must overcome a strong presumption of counsel's competence. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984). "In evaluating the objective reasonableness of trial counsel's conduct, we examine 'whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" *State v. Madsen*, 813 N.W.2d 714, 724 (Iowa 2012) (citation omitted). "Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Lado v. State*, 804 N.W.2d 248, 251 (Iowa 2011).

The ultimate inquiry on prejudice is whether trial counsel's allegedly deficient performance caused a complete "breakdown in the adversary process" such that the conviction is unreliable. *Strickland*, 466 U.S. at 687. This requires the defendant to establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (quoting *Strickland*, 466 U.S. at 694).

Zaabel's ineffective-assistance claim is time-barred. *See* Iowa Code § 822.3 (2013) (providing a three-year limitations period to assert postconviction claims). Zaabel contends his claim can proceed because it is "a ground of fact or law that could not have been raised within the applicable time period." *Id.* To meet the test for this exception, the asserted ground of fact must be one that could not have been presented at trial, that is relevant to the challenged conviction, and that has a nexus with the conviction. *See Harrington v. State*, 659 N.W.2d 509, 521 (Iowa 2003). Zaabel's claim does not meet the "ground of fact" exception. First, the district court found, and we agree, "the most credible evidence" is Fors, Holland, and Zaabel all knew of the tissue at the time of trial. The additional tissue, and Fors' photograph of the same, was discussed in depositions at which Zaabel was present. We give weight to the district court's determination of witness credibility at the postconviction hearing. *See Cox v. State*, 554 N.W.2d 712, 714 (Iowa Ct. App. 1996). Second, even if Zaabel did not have actual knowledge of the evidence, he "is charged with knowledge of matters known to [his] attorney, which matters the attorney learns through the course of representing [him]. In short, knowledge of an attorney is knowledge of

the client." *Carroll v. Martir*, 610 N.W.2d 850, 859 (Iowa 2000). Third, Zaabel, by his own admission, knew of this claim by 2008 but failed to bring this postconviction action within three years of that date. *See Blackwell v. State*, No. 10-0681, 2012 WL 836766, at *4 (Iowa Ct. App. Mar. 14, 2012) ("[P]ostconviction relief applications based on 'a ground of fact' that could not have been raised within the three-year limitation period, must also be filed within three years of the discovery of the new ground of fact or be barred.").

Even if the claim were not time-barred, the claim does not warrant relief on the merits. Zaabel must establish his counsel breached an essential duty and prejudice resulted. *Strickland*, 466 U.S. at 687. Zaabel never contends his counsel breached an essential duty, which ends the inquiry. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *Graves*, 668 N.W.2d at 869 (stating inability to prove either element is fatal).

Zaabel also failed to establish *Strickland* prejudice. First, there is no newly discovered evidence to admit were this matter to be retried. The tissue was never tested or analyzed. Fors no longer has the tissue. Second, even assuming the material collected was blood and brain tissue, testimony regarding what was collected would be merely cumulative of other evidence admitted at trial. *See State v. Wixom*, 599 N.W.2d 481, 484 (Iowa Ct. App. 1999) ("When evidence is merely cumulative, it cannot be said to injuriously affect the complaining party's rights."). A police officer, Carl Bessman, testified there was tissue left on the ground at the Mining Boulevard site. A doctor testified the brain matter could have fallen out along Mining Boulevard even if Gibson received

blows to the head at Zaabel's property. Similarly, to the extent Zaabel claims the additional blood and brain tissue are evidence of a sloppy police investigation, that theory and evidence regarding the same were introduced at Zaabel's trial. Finally, there was overwhelming evidence of Zaabel's guilt. *See Whitsel v. State*, 439 N.W.2d 871, 875 (Iowa 1989) ("Regardless of the appellant's many claims as to ineffective assistance of counsel, we find no prejudice to the appellant because the evidence presented at his trial was overwhelming concerning his guilt."); *see also State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006) ("The most important factor under the test for prejudice is the strength of the State's case."). The litany of evidence has been recited in Zaabel's previous appeals:

- He had a pecuniary interest (as beneficiary of victim's life insurance policy) to commit this crime;
- He had a romantic interest (desire to reunite with a past love interest) to commit this crime;
- Bone fragments from the victim's skull and blood spatter from the victim, as well as a bloody 2" by 2" piece of lumber, were found on his property;
- A splinter matching the lumber was found matted in the victim's hair;
- Blood found on Zaabel's jacket was consistent with splatter commonly found on blunt trauma assailants;
- Gibson's body showed evidence it had been moved to the place where it was finally discovered (the Mining Boulevard site);
- Gibson's blood was found all over Zaabel's truck;
- Zaabel's claim he had been unconscious for several hours was opined to be medically inconsistent with his subsequent physical symptoms; and
- His explanation of his and Gibson's activities on the night of the murder was inconsistent with the pathologist's estimation of the time of her death.

*Zaabel II*, 2004 WL 1899837, at *3; *Zaabel I*, 2001 WL 1130855, at *7.

III.

We turn next to Zaabel's newly discovered evidence claim. To prevail on a postconviction-relief claim on the basis of newly discovered evidence, Zaabel must show: (1) the evidence was not discovered until after judgment; (2) the evidence could not have been discovered earlier through the course of due diligence; (3) the evidence is material to the issue, not merely cumulative or impeaching; and (4) it would probably change the result if a new trial is granted. *See* Iowa Code § 822.2(1)(d); *Summage v. State*, 579 N.W.2d 821, 822 (Iowa 1998) (citing *Jones v. Scurr*, 316 N.W.2d 905, 907 (Iowa 1982)).

Zaabel has contended from the outset that three men attacked Gibson and him on the side of the road. In response, the police investigated three individuals now known to be Jason Rosales, Craig Hood, and John Hood. Ultimately, the police concluded the three men were not involved in the incident and that Zaabel concocted the story. In Zaabel's first postconviction-relief proceeding, Zaabel presented the affidavit of Spencer Fitzpatrick stating Rosales admitted his involvement in the crime to Fitzpatrick. Our court wrote, "[T]he affidavit does nothing more than establish the possibility that [Zaabel] had an accomplice, not that Rosale[s] was the sole perpetrator of the crimes." *Zaabel II*, 2004 WL 1899837, at *3.

In this case, Zaabel has produced another affidavit documenting another purported confession to Gibson's murder. Zaabel supported his application in this case with an affidavit from John Hays, dated February 6, 2010:

> I have known John Hood since we [were] children in Otho. I had not seen John Hood in several years until I ran into him outside my cousin's place in 2006. During my conversation with John Hood,

> he told me that he knew information about Michelle Zaabel's [sic] murder. John Hood told me that Randy Zaabel did not die, and that was a good thing because if he had there would have been three people doing life instead of one. John Hood then told me that he remembered how Michelle [lay], and that she owed some people a lot of money for drugs and got what she deserved. John Hood said nothing about Randy Zaabel being involved in the murder.

Hays testified at the postconviction trial. Hays testified Hood told him it was fortunate "Randy had got away or there would have been probably three killings instead of two." Hays testified Hood told him there was Hood "and one other person" at the scene of the murder. Hays testified Hood did not say Zaabel was not involved in the murder; Hood just said "it's a good thing he got away."

The district court denied Zaabel's claim. We agree that Zaabel's claim does not entitle him to any relief. The claim is time-barred. Even a claim of newly discovered evidence within the meaning of section 822.2(1)(d) must be presented within the three-year limitations period set forth in section 822.3. If the claim is presented outside the limitations period, as a threshold to consideration on the merits, the applicant must establish the claim relies on a ground of fact that could not have been raised within the limitations period within the meaning of section 822.3 as interpreted in *Harrington*, 659 N.W.2d at 521. Only after the *Harrington* standard has been met can the postconviction court consider whether the evidence is newly discovered within the meaning of *Summage*. *See* 579 N.W.2d at 822. While newly discovered evidence will frequently satisfy the ground-of-fact exception to the limitations period, that is not necessarily true in every case. Here, Zaabel does not overcome the limitations period because he knew of the purported confession by at least February 2010, when he received

the Hays affidavit. He did not file his application within three years of that date. His claim is thus time-barred. *See Blackwell*, 2012 WL 836766, at *4.

Even if we considered his claim on the merits, Zaabel failed to satisfy the *Summage* test. Hays's testimony is more likely than not inadmissible hearsay. The district court concluded Hays lacked any credibility or reliability. Hays admitted he has bipolar disorder and had stopped taking his medication. He could not really recall his conversations with Hood or Zaabel. To the extent Hays could recall the conversations, his postconviction trial testimony was not consistent with his affidavit. In addition, Hays's testimony would not have changed the result of the trial. Hays's testimony does not exonerate Zaabel. Just as in Zaabel's previous postconviction-relief case, the purported confession "does nothing more than establish the possibility that [Zaabel] had an accomplice." *Zaabel II*, 2004 WL 1899837, at *3. Finally, as set forth above, the State's case against Zaabel was very strong. Zaabel's theory is contradicted by overwhelming physical evidence.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**