# IN THE COURT OF APPEALS OF IOWA

No. 23-1624
Filed July 24, 2024

**SHAWN WILLIAM DURRELL,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.

An applicant appeals the denial of his application for postconviction relief.

**AFFIRMED.**

Alfredo Parrish of Parrish Kruidenier, L.L.P., Des Moines, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Shawn Durrell appeals the district court's denial of his application for postconviction relief (PCR). Durrell alleges that his counsel failed to inform him of the collateral and direct consequences of his plea, failed to inform him that he was not guaranteed a deferred judgment, and failed to negotiate a plea that ensured a deferred judgment.

## I.  Background Facts and Prior Proceedings

Our court affirmed Durrell's conviction on direct appeal. That opinion set out these facts:

> Durrell was an employee of the Iowa Department of Corrections (DOC) at the women's correctional facility at Mitchellville. He was charged with sexual misconduct with an offender, M.B., in violation of Iowa Code section 709.16(1) (2019), an aggravated misdemeanor. The State alleged Durrell engaged in a sex act with a woman who was in the custody of the DOC.
> On January 30, 2020, Durrell signed a written plea agreement in which he agreed to plead guilty to the charge. The plea agreement stated,
> > Unless I commit a new crime, or violate a court order the plea agreement is deferred judgment, 2 years probation, $300.00 probation fee, $625.00 civil penalty, court costs, sex offender registry.
> > The court is not bound by any plea agreement and may give me the maximum sentence allowed by law, including any enhanced sentence.
> Durrell checked a box to show he gave up his right to have a record made of the plea proceedings and sentencing. The court accepted Durrell's guilty plea. Durrell did not file a motion in arrest of judgment.
> Durrell was sentenced to two years in prison, the sentence was suspended, and he was placed on probation for two years. Durrell was ordered to pay a $625.00 civil penalty and a $625.00 surcharge.[1] Durrell was also given a special sentence under section 903B.2 and required to register as a sex offender for a period of ten years.

---

[1] The sentencing order required that Durrell pay the fine of $625.00 and the civil penalty of $625.00 along with assessed court costs and surcharges.

*State v. Durrell*, No. 20-0967, 2022 WL 108472, at *1 (Iowa Ct. App. Jan. 12, 2022).

## II. Standard of Review

Although the denial of an application for PCR is usually reviewed for correction of errors at law, we review claims of ineffective assistance of counsel de novo. *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016).

## III. Ineffective Assistance of Counsel

Durrell's PCR action alleged ineffective assistance of counsel. The trial court denied his application following an evidentiary hearing. On appeal, Durrell asserts that his counsel failed to inform him of the direct and collateral consequences of his plea, failed to inform him that he was not guaranteed a deferred judgment, and failed to negotiate a Rule 2.10 plea.[2]

To prevail on an ineffective assistance of counsel claim, a defendant must first show that his attorney's performance was deficient. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Considering an attorney's performance, we "must indulge a strong presumption" that the conduct was reasonable, and "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). In addition to showing that the counsel was deficient, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

---

[2] Under Iowa Rule of Criminal Procedure 2.10, a plea may be conditioned on the court's acceptance. Iowa R. Crim. P. 2.10 (2020) (effective to June 30, 2023); *State v. Hanna*, No. 17-2090, 2019 WL 320184, at *2 (Iowa Ct. App. Jan. 23, 2019).

at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Worthington v. Roper,* 631 F.3d 487, 498 (8th Cir. 2011) (internal quotation marks omitted).

A. Direct and Collateral Consequences

The State contends that Durrell did not preserve error on his argument that trial counsel failed to advise him on the direct and indirect consequences of his plea, mainly that there would be a special sentence imposed under Iowa Code chapter 903B.2. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). However, "[i]f the court's ruling indicates that the court *considered* the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved." *Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012).

Durrell's counsel argued that Durrell was not advised of the consequences of the plea, either direct or collateral. In the background section of the ruling, the court stated that Durrell "further acknowledged that the collateral consequences of the sex offender registry would apply to him regardless of whether he received a deferred judgment," and the court noted "[t]his included restrictions on movement, registering during vacations, and other collateral issues." This was the only time the court mentioned collateral or direct consequences in its ruling.

"When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal." *Meier*, 641 N.W.2d at 537. And Durrell did that by moving to reconsider: "Applicant respectfully requests that this Court expand its

June 10, 2023, ruling to expressly address and resolve the issue of whether Trial Counsel's failure to advise applicant of the direct and collateral consequences of the plea constituted ineffective assistance of counsel." The court order issued following the motion stated that the court "disagrees that Petitioner's counsel was obliged to inform Petitioner of the ramifications of his plea, because this was not a Rule 2.10 plea." We determine Durrell's arguments on the direct and collateral consequences were preserved for our review.

    i.   Direct Consequences

Counsel has a duty to inform the defendant of the direct consequences of a plea. *State v. Carney*, 584 N.W.2d 907, 910 (Iowa 1998) (en banc) (per curiam). Durrell argues that trial counsel failed to advise him of the sentencing consequences of his plea, specifically the special sentence requirements under Iowa Code section 903B.2. The 903B.2 special sentence is a direct consequence, and a defendant has the right to be informed of it before their plea. *Doss v. State*, 961 N.W.2d 701, 710 (Iowa 2021).

Durrell's argument concerning the direct consequences utilizes photographs taken by trial counsel or staff of a whiteboard detailing the terms of the plea agreement. In one whiteboard photo dated November 12, 2019, a "special sentence" is listed as one of the consequences of his plea. In a whiteboard photo dated January 9, 2020, the "special sentence" is not listed. Durrell argues this indicates he was directly misled by trial counsel, asserting that as the plea negotiations advanced, there was no longer a risk of a "special sentence." But the January 9 whiteboard specifically specifies it is for a "deferred judgment," whereas the November 12 whiteboard appears to be regarding the terms for a suspended

sentence. We conclude Durrell has not demonstrated he was unaware that a suspended sentence encompassed a special sentence. A special sentence applies when a person is "convicted." *See* Iowa Code § 903B.2.

Durrell also argues that trial counsel did not inform him that his plea would require a submission of a DNA sample. *See id.* § 81.2(1). But Durrell's signed written plea of guilty states he would have to submit a DNA sample if he was convicted of an aggravated misdemeanor. As expanded on below, Durrell was aware of the possibility of a conviction, and he was aware he may have to submit a DNA sample. Durrell was informed of the direct consequences that would apply if he did not receive a deferred judgment. We determine there was no breach of an essential duty by counsel.

ii. Collateral Consequences

Despite the duty to inform of direct consequences, "if the fallout from the plea is collateral, counsel is generally not held to be ineffective for failing to inform the defendant about it." *State v. Carney*, 584 N.W.2d 907, 910 (Iowa 1998) (cleaned up). In fact, "[t]he failure to advise a defendant concerning a collateral consequence, even serious ones, cannot provide a basis for a claim of ineffective assistance of counsel." *Id.*

Durrell asserts trial counsel misinformed him on the collateral consequences of his plea, including the impact a conviction would have on his ability to travel and own firearms, and the treatment of an aggravated misdemeanor as a felony in other jurisdictions. He argues this gives him a claim related to collateral consequences. This is a correct statement of law. *Stevens v. State*, 513 N.W.2d 727, 728 (Iowa 1994) ("The rule is well established that defense

counsel does not have a duty to inform a defendant about the collateral consequences of a guilty plea, but commits reversible error if counsel misinforms the defendant as to these consequences."). To this end, "[i]f the subject of the misinformation is of substantial importance to the defendant and is considered by him in deciding to plead guilty, the plea is involuntarily and invalid." *Saadiq v. State*, 387 N.W.2d 315, 324 (Iowa 1986). Durrell argues "he communicated specific concerns to Trial Counsel which triggered the duty to clarify how his plea would impact him." *See id.* at 325 (noting "counsel's duties in connection with a defendant's guilty plea include advising the defendant of available alternatives and considerations important to counsel or the defendant in reaching a plea decision").

Despite Durrell's assertions, the record does not contain evidence that he was misinformed, or that he communicated specific concerns regarding these collateral consequences to trial counsel. Durrell testified he received no information about the firearms or travel consequences of his plea. But not informing is not misinforming. *See id.* ("Failure to inform of the additional consequence that [defendant] could not possess the firearm . . . does not make the information which was given inaccurate. The question is not one of *misinformation*; instead it is one of whether counsel . . . went *far enough* in informing [defendant].").

Counsel has no general duty to inform of the collateral consequences of a plea. *Sothman v. State*, 967 N.W.2d 512, 523 (Iowa 2021). And Durrell has shown no misinformation or specific concerns that would create a claim of ineffective assistance regarding the collateral consequences of his plea.

B. Deferred Judgment and Rule 2.10 Plea

Durrell also alleges his trial counsel represented he was guaranteed a deferred judgment and that counsel failed to negotiate a Rule 2.10 plea. He again points to the whiteboard exhibits. The whiteboard photo dated January 9 outlined a deferred judgment. This included listing elements such as probation, a no-contact order, and sex offender registry. It also listed "Community Service??" This was the only portion of the whiteboard that included question marks. Durrell argues this means it was the only portion of the plea agreement in question, and therefore a deferred judgment was certain. Durrell also presented an affidavit authored by himself to support his claim that he was assured a deferred judgment.

But Durrell's argument that counsel assured him that he was guaranteed a deferred judgment is contradicted throughout the record. When considering if a defendant was promised a deferred judgment by counsel, we consider the evidence beyond just the defendant's allegations. *See Wise v. State,* 708 N.W.2d 66, 71 (Iowa 2006) ("In addition to [defendant's] plea statements, we have recited a number of other matters that directly contradict [defendant's] allegation that [counsel] told her she would receive a deferred sentence if she pleaded guilty.").

At the PCR hearing, Durrell repeatedly confirmed he knew he was not guaranteed a deferred judgment. First, when questioned by his PCR counsel:

> A. I was under the understanding that I was going to receive a deferred judgment.
> Q. How was that assured to you that you were going to get a deferred judgment?
> A. Jake talked to Meggan, and they said I had a chance to get that.

Durrell acknowledged he had a chance to get a deferred judgment, showing his understanding it was not a guaranteed outcome. And when the State followed with cross-examination, Durrell confirmed this:

> Q. Now, you indicate that you did not have any idea that you weren't guaranteed that deferred judgment. Is that what you're saying?
> A. Can you ask me that again, please?
> Q. Well, before you said that [trial counsel] told you you had a chance to get that. And I actually wrote down "chance."
> A. Yes, yes,
> Q. So we understand by just the term "chance," in and of itself that's not a guarantee; right?
> A. That's correct.
> Q. So you understood that there was a chance that you would not get it?
> A. Correct.
> Q. So when you went into that sentencing, you understood there was a chance you would not be given that deferred judgment that the plea agreement said?
> A. Right.

Durrell's testimony confirms he was aware a deferred judgment was not guaranteed. And Durrell's signed petition to plead guilty stated: "The Court is not bound by any plea agreement and may give me the maximum sentence allowed by law."

Trial counsel also testified he never guaranteed Durrell a deferred judgment. And when the PCR court considered trial counsel's testimony and Durrell's testimony, it found trial counsel more credible. We give deference to the court's credibility findings. *See Cox v. State*, 554 N.W.2d 712, 714–15 (Iowa Ct. App. 1996).

Durrell also claims that trial counsel was ineffective because "trial counsel failed to prepare a Rule 2.10 plea on Durrell's behalf." But the record does not establish Durrell's counsel was ineffective in this regard. "Improvident trial

strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel." *State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992). Trial counsel testified a Rule 2.10 plea is very infrequent in his practice, and in his experience, judges do not favor them as they interfere with judicial discretion. Durrell's signed plea clearly stated that the court maintained discretion in sentencing. We conclude that counsel did not breach an essential duty regarding the deferred judgment claims.

## IV.     Conclusion

For the above stated reasons, Durrell has not shown his trial counsel breached an essential duty. Accordingly, we affirm.

**AFFIRMED.**