# IN THE COURT OF APPEALS OF IOWA

No. 24-0766
Filed October 1, 2025

JOHN CHARLES DONAHUE,
    Applicant-Appellant,

vs.

STATE OF IOWA,
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Audubon County, Margaret Reyes,

Judge.

An applicant appeals the denial of postconviction relief. **AFFIRMED.**

Tiffany Kragnes, Des Moines, for appellant.

Brenna Bird, Attorney General, and Katherine Wenman, Assistant Attorney

General, for appellee State.

Considered without oral argument by Tabor, C.J., and Ahlers and Langholz,

JJ.

**TABOR, Chief Judge.**

A jury convicted John Donahue of sexual abuse in the third degree for digitally penetrating the vagina of a child. Our supreme court rejected his direct-appeal challenges to that conviction. *See State v. Donahue*, 957 N.W.2d 1 (Iowa 2021). Donahue is now back, appealing the district court's denial of his application for postconviction relief (PCR). He blames his trial attorneys for his conviction and claims he is actually innocent.

After thoroughly reviewing the criminal and PCR records, we find Donahue proved neither ineffective assistance of counsel nor actual innocence.[1] We thus affirm the denial of relief.

## I.      Facts and Prior Proceedings

When T.G. was eleven or twelve years old, she lived with her father and visited the home of his girlfriend's grandparents. In those years, T.G. referred to the grandfather, Donahue, as "Papa." She would cook with the grandmother, and Donahue helped her with math homework. At trial, she recalled that when she was in the fifth or sixth grade, during one of those visits, Donahue sat next to her on the couch and put his hand down her pants underneath her underwear. In her words: "He stuck his finger in me and moved it in and out." Donahue took the stand and denied T.G.'s allegations.

---

[1] We review PCR claims of ineffective assistance of counsel de novo. *Trane v. State*, 16 N.W.3d 683, 692 (Iowa 2025). In doing so, we give weight to the district court's assessments of witness credibility. *Id.* But that court's legal determinations are not binding on appeal. *Id.* We review the adjudication of an actual-innocence claim for legal error, unless it implicates a constitutional right, then we review de novo. *Dewberry v. State*, 941 N.W.2d 1, 4 (Iowa 2019).

After two hours of deliberation,[2] the jury returned a verdict, finding Donahue guilty of sexual abuse in the third degree, a class "C" felony, in violation of Iowa Code section 709.4(1)(a) (2018). The court imposed an indeterminate ten-year prison term. Donahue filed a direct appeal, challenging (1) the exclusion of evidence of an alleged sexual assault against T.G. that occurred away from Donahue's home, (2) a corroboration jury instruction, and (3) sufficiency of the evidence. The supreme court affirmed his conviction in March 2021. *Donahue*, 957 N.W.2d at 11–12.

Meanwhile, in July 2019, Donahue filed a pro se PCR petition, which was amended with the help of counsel in February 2021 and November 2022. The petition raised several claims of ineffective assistance of counsel. Donahue also asserted that he was "actually innocent of the crime for which he was convicted." The PCR court held a hearing in December 2022 and July 2023. Donahue testified about the lack of communication with his trial counsel. He also called numerous character witnesses. The State submitted deposition testimony from trial attorneys, Theodore Wonio and Joseph Rasmussen.

After post-trial briefing, the court denied relief in February 2024. On the ineffective-assistance claims, the court found that counsel made reasonable strategic choices in their representation of Donahue. In rejecting the actual-innocence claim, the court noted: "While T.G.'s accounts of the abuse were not perfect, they were sufficient to convince a reasonable fact finder that Donahue

---

[2] This was the second trial of Donahue's charges; the first trial ended in a hung jury. Donahue testified at both trials.

sexually abused her against her will. There has been no recantation of the abuse." Donahue appeals those findings.

## II. Analysis

### A. Ineffective Assistance of Counsel

To merit relief, Donahue must prove that his counsel performed below the standard required of a reasonably competent attorney. *See Trane*, 16 N.W.2d at 692. "We presume counsel performed competently unless [Donahue] proves otherwise by a preponderance of the evidence." *Id*. (quoting *State v. Doolin*, 942 N.W.2d 500, 507 (Iowa 2020)). He must also show that counsel's errors resulted in "constitutional prejudice." *Smith v. State*, 7 N.W.3d 723, 726 (Iowa 2024). Failure to prove either prong is fatal to Donahue's case. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001).

Donahue alleges three instances of subpar performance by his trial counsel: (1) failing to object to the prosecutor's prejudicial remarks in opening statements, (2) failing to object to vouching by the State's expert witness, and (3) failing to fully investigate and prepare for trial. We will address each claim in turn.

### 1. Opening statements

As his first claim of ineffective assistance, Donahue maintains that trial counsel should have objected when the prosecutor referenced more than one act of sexual abuse. He points to these passages from the State's opening statement:

> After years of turmoil and instability in her life, it looked like she had finally found a safe haven where she could just relax and be an innocent kid.
> Sadly, the facts are so that the Donahue home was anything but safe for [T.G.] because this man, her Papa, repeatedly sexually abused her during the time that she lived with her dad.
> . . . .

Due to the frequency with which he abused her and over an extended period of time, only a few occasions stand out in her mind.

Because the State charged him with only one count of sexual abuse, Donahue argues that these references to ongoing abuse were prosecutorial misconduct under *State v. Graves* and should have elicited an objection from defense counsel.[3]  668 N.W.2d 860 (Iowa 2003).

The decision not to object was strategic, according to attorney Wonio's deposition.  He testified that defense counsel anticipated the State's reference to "multiple sex offenses" and refrained from objecting because counsel believe that reference could "open the door" to discussing an alleged incident of abuse that would skew to Donahue's advantage.  Wonio explained: "[W]e thought we'd like to have that as a potential event to explore if we felt during trial that it was in John's best interest to explore that."  That event—the so-called Carroll incident—involved allegations that T.G. made in a November 2017 deposition when "she spoke at length about an incident in Carroll, Iowa of the defendant inappropriately touching her there."  *See Donahue*, 957 N.W.2d at 5.  Defense counsel believed those Carroll allegations undermined T.G.'s credibility.

As it happens, that defense strategy did not pay off.  *Id*. at 9 ("[T]he district court did not abuse its discretion when it prohibited Donahue from questioning T.G. about the Carroll incident.").  But hindsight is twenty-twenty.  Here, Donahue

---

[3] Donahue also raises a free-standing claim of prosecutorial misconduct.  We recognize that the PCR court addressed that claim directly but on appeal we agree with the State that Donahue waived it by not raising it on direct appeal.  *See Manning v. State*, 654 N.W.2d 555, 561 (Iowa 2002) (interpreting Iowa Code section 822.8 as imposing a burden on the applicant to show why any ground for relief raised in PCR was not asserted on direct appeal).

cannot show that counsel's imperfect foresight was an unprofessional error. *See State v. Majors*, 940 N.W.2d 372, 391 (Iowa 2020) ("More is required than a showing that counsel's trial strategy backfired or the case would have been tried differently by another attorney."). Like the district court, we find Donahue has not proved the breach-of-duty prong of this ineffective-assistance claim.

### 2. Vouching

Next, Donahue contends his trial attorneys were constitutionally remiss in not objecting to expert testimony vouching for T.G.'s credibility. The expert in question was forensic interviewer Amy Scarmon. Scarmon worked at the child advocacy center where T.G. was interviewed about the abuse allegations. In this appeal, Donahue highlights four aspects of Scarmon's testimony: (1) her opinion that it is common for children to know their perpetrators, (2) her observation that children frequently deny abuse before disclosing it later, (3) a definition of grooming behavior, and (4) her explanation of research on the suggestibility of children. Donahue condemns these topics as "impermissible vouching" under *State v. Dudley*, 856 N.W.2d 668, 676–77 (2014). Based on that condemnation, he believes counsel was ineffective in not objecting to the expert's opinions.

But as the district court found, Scarmon's non-specific testimony was permitted by *Dudley* and its progeny. *See State v. Leedom,* 938 N.W.2d 177, 192–93 (Iowa 2020) ("Experts may express general opinions but may not directly comment on the veracity of the child victim."). Scarmon did not offer her opinion on T.G.'s veracity or testify that T.G.'s actions were consistent with the behavior of abuse victims generally. *See Dudley*, 856 N.W.2d at 677–78. The expert "did not connect [T.G.'s] experience to the research" on grooming and suggestibility.

*Leedom*, 938 N.W.2d at 193. Because the testimony was not vouching, counsel had no duty to object. *See State v. Rice*, 543 N.W.2d 884, 888 (1996).

### 3. Investigation and Preparation

As his third claim of ineffective assistance, Donahue alleges that trial counsel failed to thoroughly investigate his case and prepare his defense. He chronicles several measures that counsel did not take in getting ready for the criminal trial.[4] First, counsel did not interview the family members and other witnesses who testified at the PCR trial. Second, they did not collect photographs or text messages between T.G. and her father's girlfriend.[5] And third, they did not hire a private investigator[6] or "research potential expert witnesses relating to memory, suggestibility, and improper forensic interviewing."

As for lay witnesses, attorney Wonio testified that it was Donahue's own decision not to call family members or friends to bolster his character.[7] "[W]e discussed many times whether or not we should call character witnesses or any other individuals we thought would be of benefit." But "at the end of the day our trial strategy was to keep it simple," Wonio explained. They viewed the second trial as a credibility contest between Donahue and T.G. Wonio also recalled that

---

[4] Donahue focuses on counsel's preparation for the second criminal trial.

[5] Because Donahue's brief does not flesh out how that evidence would have assisted his defense, we will not consider this alleged deficiency.

[6] As the State notes, Donahue did not receive a ruling on his claim involving a private investigator. So we have nothing to review. *See State v. Hernandez*, 20 N.W.3d 502, 509 (Iowa Ct. App. 2025).

[7] Donahue also asserts that counsel should have presented testimony about his limited mobility, specifically that he "did not sit on the couch and if he did, he would sink in." Recall that T.G. testified the sexual abuse occurred while they were sitting on the couch. But that line of defense was problematic; attorney Wonio testified that he had seen Donahue get up from the couch when he gave his attorneys a tour of the house.

"there was another allegation that another child had made against John," and they were concerned: "If we're bringing character witnesses in, is the court going to allow that testimony in too?" In our de novo review, we find counsel—in consultation with their client—reached "a reasonable strategic decision [not to call these witnesses] that we will not second guess." *Smith*, 7 N.W.3d at 733.

To support his claim that trial counsel should have called an expert witness, Donahue offered the deposition testimony of Dr. Kim MacLin in the postconviction proceedings. Dr. MacLin is a psychology professor at the University of Northern Iowa, where she researches memory and brain processes and teaches a class on forensic interviewing. In her testimony, Dr. MacLin critiqued the interview that Scarmon conducted with T.G., including the wording of the questions. On appeal, Donahue contends that had counsel called Dr. MacLin to testify at the criminal trial, there was a reasonable probability that the jury would not have found him guilty.

We reject that contention. Dr. MacLin conceded "there is no such thing as a perfect [forensic] interview." As she testified, they deal with "challenging topics," and even a flawed interview "still might be a reasonably good memory evidence collection tool." Because Dr. MacLin's opinion would have done little to undermine the probative value of Scarmon's testimony, it would not have been a game changer for the defense. In short, Dr. MacLin's testimony would not have created a reasonable probability of a different outcome. *See Cox v. State*, 554 N.W.2d 712, 714 (Iowa Ct. App. 1996) ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

## B. Actual Innocence

Turning to Donahue's claim of actual innocence, it was his burden to show "by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant." *See Dewberry*, 941 N.W.2d at 5 (describing the "demanding actual-innocence standard" adopted in *Schmidt v. State*, 909 N.W.2d 778, 793 (Iowa 2018)).

In trying to meet that demanding standard, Donahue highlights evidence from the PCR hearing where "multiple witnesses testified that Donahue was trustworthy and a good person." He also points to testimony that his physical ailments prevented him from "mov[ing] in the manner testified by T.G. at trial."[8]

The State counters that Donahue had the chance to present evidence of his character and his alleged mobility restrictions before the jury, and decided not to. In the State's view, Donahue is barred by Iowa Code section 822.8 from resting his actual innocence claim on grounds he waived at trial. *See id.* at 4. We agree with the State's reasoning: this PCR proceeding does not provide Donahue with "an opportunity to play the cards he chose to keep in his hand" at his criminal trial.

Beyond that procedural bar, Donahue cannot overcome the fact that the jury reasonably believed T.G.'s testimony that he sexually abused her. *Donahue*, 957 N.W.2d at 10–11 ("A sexual abuse victim's testimony alone may be sufficient evidence for conviction."). Thus, he fails to meet the demanding actual-innocence standard.

**AFFIRMED.**

---

[8] During his testimony, Donahue explained that he had diabetes and lost part of his foot.