# IN THE COURT OF APPEALS OF IOWA

————————————

No. 24-1961
Filed April 1, 2026

————————————

**Justin David Simpson,**
Applicant–Appellant,

v.

**State of Iowa,**
Respondent–Appellee.

————————————

Appeal from Iowa District Court for Linn County,
The Honorable Michael Harris, Judge.

————————————

**AFFIRMED**

————————————

Des C. Leehey, Cedar Rapids, attorney for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant
Attorney General, attorneys for appellee.

————————————

Considered without oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Badding, J.

**BADDING, Judge.**

In the spring of 2011, Justin Simpson sexually abused his children's thirteen-year-old babysitter. A jury found him guilty of third-degree sexual abuse the next year.[1] Simpson applied for postconviction relief in 2017, raising claims of actual innocence, ineffective assistance of counsel, and structural error. After a hearing on the application in 2024, the district court denied those claims.

Simpson appeals, challenging the court's failure to find that trial counsel was ineffective for not hiring an expert witness and its rejection of his structural-error claim. We review these constitutional claims de novo. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021).

\*\*\*

At Simpson's criminal trial, his thirteen-year-old victim testified that one night when she was babysitting, Simpson came home drunk, took her pants and underwear off and "had sex with her by putting his penis in her vagina." *State v. Simpson*, Nos. 3-1204, 13-0087, 2014 WL 4243260, at \*1 (Iowa Ct. App. Aug. 27, 2014). She said that it lasted for "about seven minutes" and hurt. About a month later, the thirteen-year-old disclosed the abuse to her parents. She was physically examined by Dr. Regina Butteris at a child protection center. Dr. Butteris testified that the child's vaginal exam was normal, with no observable injury. That was not unusual, according to

---

[1] The jury also found Simpson guilty of lascivious acts with a child. In his direct appeal, we found that because Simpson committed only one physical act, he could not be cumulatively punished for both offenses. *State v. Simpson*, Nos. 3-1204, 13-0087, 2014 WL 4243260, at \*3 (Iowa Ct. App. Aug. 27, 2014). We remanded the case to the district court for resentencing. *Id.* at \*5. On remand, the court resentenced Simpson for third-degree sexual abuse and dismissed the lascivious-acts count.

Dr. Butteris. She testified that less than five percent of the approximately 3,500 sexual-abuse examinations she had conducted revealed physical injury. Dr. Butteris also testified that although the child's hymen was uninjured, the absence of that injury did not rule out sexual assault. She debunked the myth that "if you have sexual intercourse, the hymen breaks" and explained "there are studies to support that you can have vaginal penetration without an injury."

Simpson faults his trial counsel for not deposing Dr. Butteris, conducting only a brief cross-examination of her, and failing to hire an expert witness to rebut her testimony. To establish that counsel provided ineffective assistance, Simpson must prove "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Lado v. State*, 804 N.W.2d 248, 251 (Iowa 2011) (citation omitted). We conclude that his claim fails on both prongs.

At the postconviction-relief hearing, counsel explained that she did not depose Dr. Butteris because the plea offer from the State was contingent on not conducting any depositions. Going into trial, however, counsel knew that Dr. Butteris was going to testify that the child "didn't have an injury and that her hymen was still intact." And counsel wanted that testimony to come in, explaining she favored a "common sense" approach over competing expert testimony:

> [M]ost people are gonna use common sense to say that supposedly in your case you said that this young girl who's supposed to be violently attacked for seven minutes is not gonna have any injuries, not gonna have any blood and the hymen's still gonna be intact. Most people are not gonna believe that; I don't care what the doctor gets up there and says. I think I even argued that in my closing.

Simpson challenges this strategy, claiming that "[w]hen the other side has an expert, common sense mandates that you hire one too, or at least have a compelling reason against doing so." But "[t]here is no bright-line duty for an attorney to retain an expert." *Dawson v. State*, No. 17-1679, 2019 WL 1940727, at *5 (Iowa Ct. App. May 1, 2019). Instead, "the question of whether or not to call an expert witness is a matter of trial strategy." *Heaton v. State*, 420 N.W.2d 429, 432 (Iowa 1988). And "[m]iscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2011).

Counsel's decision to rely on the jurors' common sense was a strategic one. As the district court found, Dr. Butteris "testified as [counsel] believed she would and, in [her] experience, this testimony provided an opportunity to make a strong argument to the jury." This was a reasonable trial strategy, not a breach of duty. *See State v. Majors*, 940 N.W.2d 372, 392 (Iowa 2020) (finding trial counsel's "strategic decision to rely on his own cross-examination of the State's expert" was a reasonable one).

Simpson also failed to prove that he was prejudiced by counsel's decision to forgo an expert. To establish prejudice, a defendant "must demonstrate 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Ledezma*, 626 N.W.2d at 143 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694).

Simpson argues that an expert witness might "have at least been able to qualify" Dr. Butteris's testimony "that a hymen can remain intact after a

forceful rape" and better equipped trial counsel "to challenge the statistic conjured forth by Dr. Butteris at trial." But Simpson has not proven "that such an expert existed and would have offered a favorable opinion." *Davis v. State*, No. 18-2073, 2021 WL 592226, at *7 (Iowa Ct. App. Jan. 21, 2021). Without that proof, he cannot establish prejudice. *See Cox v. State*, 554 N.W.2d 712, 715 (Iowa Ct. App. 1996) (rejecting claim that trial counsel "was ineffective in failing to call an expert to rebut the statement of the State's expert" where the applicant "presented no independent evidence to establish a contrary expert opinion would exist"); *see also Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir. 1994) ("To prove prejudice from a trial attorney's failure to investigate potential witnesses, a petitioner must show that the uncalled witnesses would have testified at trial and that their testimony would have probably changed the outcome of the trial."); *Mott v. State*, No. 19-0834, 2021 WL 591680, at *3 (Iowa Ct. App. Jan. 21, 2021) ("Mott cannot succeed on his claim that trial counsel breached an essential duty in failing to call an expert witness to challenge [a] PTSD diagnosis when Mott has failed to prove there is an expert who would have provided such an opinion in court.").

\*\*\*

We also reject Simpson's claim of "structural error." In support of this claim, he argues that trial counsel did not give his case "due attention or consideration to the point of constructively denying [him] counsel during numerous crucial stages of proceedings." Simpson points to counsel's failure to give an opening statement; lack of knowledge at the postconviction relief hearing that a "damning" text message "never appeared as an exhibit, but rather only as testimony"; refusal to conduct depositions or consult an expert; and decision to request a jury trial rather than a bench trial.

In ineffective-assistance-of-counsel cases, the United States Supreme Court

> has held that prejudice may be presumed where: (1) counsel is completely denied at a crucial stage of the proceeding; (2) where counsel fails to subject the prosecution's case to meaningful adversary testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness, for example, where counsel has an actual conflict of interest in jointly representing multiple defendants.

*State v. Feregrino*, 756 N.W.2d 700, 707 (Iowa 2008) (citing *United States v. Cronic*, 466 U.S. 648, 659 (1984)); *see also Uranga v. State*, No. 24-0196, 2025 WL 1324125, at *8 (Iowa Ct. App. May 7, 2025) (Langholz, J., dissenting) (noting our supreme court uses "the term 'structural error' to describe when prejudice is presumed on an ineffective-assistance-of-counsel claim because of the actual or constructive denial of counsel"). None of these circumstances are present here.

We agree with the district court that

> Simpson was never denied counsel, either actively or constructively, at any stage of the proceedings. . . . [Trial counsel] did place the prosecution's case against meaningful, adversarial testing. She cross-examined the prosecution's witnesses. She elicited testimony that she believed would be beneficial in making a closing argument, such as the fact that the hymen of the victim was intact. She argued during closing that there was a lack of evidence, there were inconsistencies, and that the victim had reason to fabricate her story. There were no circumstances present in this case that would justify a presumption of ineffectiveness.

What Simpson has really advanced with this claim are "routine ineffective-assistance challenges, where he claims alleged failures at 'specific points' of the proceedings rather than a failure 'to oppose the prosecution throughout the [criminal] proceeding as a whole.'" *Wright v. State*, No. 23-0101, 2024 WL 3050514, at *2 (Iowa Ct. App. Jun. 19, 2024)

6

(alteration in original) (quoting *Bell v. Cone*, 535 U.S. 685, 697 (2002)). "[T]hese specific complaints are 'plainly' governed by '*Strickland*'s performance and prejudice components.'" *Id.* (quoting *Bell*, 535 U.S. at 697–98). But, other than his expert-witness claim, Simpson did not brief those components for any of the failures identified above. We accordingly reject his structural-error claim and affirm the denial of his application for postconviction relief.

**AFFIRMED.**